MEYER, Appellant, v. CHRISTOPHER et al; CHRISTOPHER et al. v. MEYER et al., Appellants.

Division One, July 2, 1903.

1. **Contracts: POWER OF COURTS OVER.** It is axiomatic that courts can not make contracts for litigants, and that a party must show a performance on his part of his contract before he can recover upon it or compel the other party to perform it. But it is equally well settled that courts construe contracts and ascertain their meaning from all their provisions and not from single words or phrases or sentences, and when the intention of the contracting parties is thus ascertained that intention will be effectuated unless it violates some inexorable rule of law.

2. ————: ————: **BUYING LAND: INDEMNITY AGAINST INCUMBRANCE.** The owner of lots sold them for $10,000, giving her warranty deed to the vendor, one-half the price being evidenced by a note for $5,000 due in five years, secured by a deed of trust, but at the time the transfer was made it was discovered that a prior deed of trust, which secured two notes for $1,500 each, which were thought by all parties to have been paid, had not been satisfied, and thereupon the vendor agreed that the $5,000 note should be placed in the hands of the vendee's attorney to be held by him till the two notes for $1,500 "are produced" and the said attorney "is satisfied that said two notes have been paid and said deed of trust securing said two notes properly released and satisfied." *Held*, that while the contract requires the notes to be "produced" and the attorney to be "satisfied," it is plain that it was intended that these steps were to be only a means to an end, which was that the deed of trust should be released and the title cleared up, and since a literal compliance with those requirements would not have released the property from the deed of trust, the court will hold the contract effectuated by any other steps which release the deed of trust or authorize the court to decree its release.

3. ————: **CONSTRUCTION OF PARTIES.** If there is any room for doubt as to the meaning of a contract the construction the parties themselves put upon it will remove the doubt.

4. **Limitations: NOTES: CONTINUES AFTER BEGINS RUNNING.** Where the statute of limitations has once begun to run against a note, it will continue to run not only as to the original payee, but as to all subsequent owners, whether they were under disability or not. So that if the statute has begun to run against a note at the time of its

transfer, because then past due, it will be barred in ten years whether the transferee or his heir is a minor or labors under other disability, and in such case the deed of trust securing the payment of the note may be released by a court of equity in a suit brought by the subsequent vendee of the land, without waiting to discover the present holder of the note which is supposed to be lost and shown to be paid.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

AFFIRMED.

*M. A. Fyke* and *John Georgen* for appellants.

(1) Mrs. Christopher contracted to deliver the notes and has failed to do so. The lower court annuls the contract and makes a new one. The contract being valid "the parties must abide by the contract as made; courts can not make a new contract for them." Wood Machine Co. v. Bobbst, 56 Mo. App. 427; Galbraith v. Reeves, 82 Tex. 357; Chouteau v. Russell, 4 Mo. 553. "Neither the court nor the jury have the power to vary or add to the agreement nor to make a different agreement from that which the parties have made." Thornton v. Boyce, 56 Mo. App. 179; Beatie v. Rocky Branch Coal Co., 56 Mo. App. 221; Chouteau v. Russell, supra; Anson on Cont. (2 Am. Ed.), p. 426. (2) The outstanding notes are liens on the land in question. "It is well-settled law that the assignment of the note carries with it the security." Lee v. Clark, 89 Mo. 553; Bank v. Grewe, 84 Mo. 478; Logan v. Smith, 62 Mo. 459; Goodfellow v. Stilwell, 73 Mo. 19; Joerdens v. Schrimpf, 97 Mo. 383; 1 Daniel on Negotiable Instruments (3 Ed.), sec. 834. (3) The contract did not limit the time within which it should be performed. "Whenever an act is to be done and no time is fixed for the doing of it, the law implies that it shall be done within a reasonable time." State ex rel. v. Harrison, 53 Mo. App. 346; Chouteau v. Railroad, 120 Mo. 375;

Lapsley v. Howard, 119 Mo. 489. "What is reasonable time in any case will depend on the circumstances of that case." Godfrey v. Stock, 116 Mo. 403; Linville v. Welch, 29 Mo. 203; Rose v. Perkins, 98 Mo. 253. (4) Our remedy is in equity for a rescission of the contract. The contract being admitted as valid, failure to perform after a lapse of a reasonable time gives Meyer the right to rescind. 1 Wharton, Cont., sec. 311, p. 455; Sanger v. Slayden, 26 S. W. 847; Schmidt v. Reed, 132 N. Y. 115; Beckwith v. Kouns, 6 B. Mon. (Ky.) 222; 2 Wharton, Cont., sec. 742, p. 119; Jellison v. Jordan, 68 Me. 373; 2 Story's Eq. Jur., sec. 772, p. 96. Our remedy is in equity, Mr. Meyer having a lien in equity for the amounts paid him on account of the purchase price, etc. Swetitsch v. Waskon, 37 Ill. App. 155; Coleman v. Floyd, 131 Ind. 331; Galbraith v. Reeves, 82 Tex. 357. (5) The decree is void for uncertainty. It requires Meyer to pay to Mrs. Christopher all state, county and city taxes heretofore paid by her, not naming amount. "Judgment for money should specify the amount and not leave it to computation. It should be for dollars and cents." 12 Am. and Eng. Ency. Law (1 Ed.), p. 74. "Judgment should be for the amount due." Foster v. Railroad, 1 Mo. App. 390. (6) Said judgment and decree had no evidence to support it. The record does not show that Mrs. Christopher ever paid one cent of taxes.

*Karnes, New & Krauthoff* for respondents.

(1) The payment of a note extinguishes a deed of trust given to secure it, and the incumbrance is not revived by a subsequent reissue of the note. Murphy v. Simpson, 42 Mo. App. 658. (2) The decree entered in this case is a firm and effectual release of the deed of trust. The jurisdiction of a court of equity to decree a mortgage satisfied, either on the ground that the debt secured thereby is paid, or that the debt is barred,

is well established.    Adams v. Helm, 55 Mo. 468; Gard-
ner v. Terry, 99 Mo. 523; May v. Jarvis-Conklin Mtg.
Trust Co., 138 Mo. 275; Kingman v. Sinclair, 80 Mich.
427, 45 N. W. 187; Harrington v. Utterback, 57 Mo.
521.

MARSHALL, J.—These two cases are separate
cross-actions in equity, but they grow out of the same
transaction.    The case made is this:   On January 30,
1883, Elizabeth G. Williams was the owner of the lots
in controversy here, being lots 8 and 9, in block 12, of
Dundee Place, an addition to Kansas City, and on that
date she executed a deed of trust upon said lots to se-
cure two notes for $1,500 each, with interest coupons
attached, payable, respectively, January 1, 1886 and
1888, and payable to the Dundee Mortgage, Trust and
Investment Company, Limited, of Dundee, Scotland.

Edward E. Holmes was the attorney in fact, at
Kansas City, of the Dundee Mortgage, Trust and In-
vestment Company (referred to hereinafter, for the sake
of brevity, as "the Trust Company"), and he testified
that in May and June, 1886, he had possession of said
notes for the Trust Company, and that "Mr. Pratt, of
some place in New York, I don't remember the place,
wrote and asked how much it would take to procure an
assignment of these notes, or whether we would assign
them or not.   And this is my recollection, although it
is fourteen years ago, it is as clear as anything can be
during that length of time.   Subsequently, Mr. Groves
remitted from the same place, or near the same place,
I think from the same town, the amount required by me
to pay it off, and he didn't mention in his letter that
he wanted an assignment, and it had slipped my mem-
ory and I stamped the notes 'Paid,' and went up and
released them."

The release was entered on the margin of the record
as follows:   "This deed of trust is satisfied in full, both
principal and interest.   Witness my hand and seal this

18th day of May, 1888. The Dundee Mortgage, Trust and Investment Company, Limited. [Seal] By Edward E. Holmes, attorney in fact. Countersigned by A. M. Gossett, attorney. Witnessed by C. D. Lucas, recorder, by Fred Matting, deputy recorder.''

Mr. Holmes further testified that after he had marked the notes ''Paid,'' and had released the deed of trust, ''I sent the notes to Mr. Groves, and he immediately wrote me that he did not want them marked paid; that he had distinctly asked me for an assignment, and that I had given him the figures at which I would assign them. I looked up the correspondence and found that that was the fact, and that I had made a mistake. Then I wrote to him that the only thing I could do to rectify my error was to mark on the notes that they were stamped by mistake and file the statement which is copied in that abstract, which I did do.'' He further testified that he marked on the notes that they were paid by mistake and made a formal assignment of the notes and sent them to Groves, and had never seen them since, and that on June 11, 1886, he filed for record in the office of the recorder of deeds of Jackson county, the following notice:

''To whom it may concern, notice is hereby given that Charles C. Grove, of Erie county, in the State of New York, claims that the release made by the Dundee Mortgage, Trust and Investment Company, by E. E. Holmes, attorney in fact, and Alfred N. Gossett, attorney, on the margin of a deed of trust in favor of the Dundee Mortgage, Trust and Investment Company, recorded in Jackson county, Missouri, in book B No. 81, at page 325, made by E. G. Williams and husband to the Dundee Mortgage, Trust and Investment Company, Limited, was entered by mistake and that said deed of trust was to have been assigned to him by said company without recourse and all persons are cautioned against buying said premises without release from him until said claim is adjusted.

"In witness, the said company has hereto set its hand by Edward E. Holmes, attorney in fact, this 10th day of June, 1886.

"THE DUNDEE MORTGAGE, TRUST & INVESTMENT CO.,
                    LTD.,

      "A. N. GOSSETT, Attorney.

      "by EDWARD E. HOLMES,

                    "Attorney in fact."

In the interim between the 18th of May, 1886, when the deed of trust was released, and the 11th of June, 1886, when the notice above set out was filed, to-wit, on May 21, 1886, Elizabeth G. Williams and husband conveyed the lots to Charles H. Pratt, subject to the said deed of trust, and Pratt assumed and agreed to pay the said notes secured by said deed of trust.

Some time thereafter, and before April 1, 1893, (the date is not shown nor is the deed in evidence), Pratt conveyed the property to Lilla L. Bliss, and on April 1, 1893, Mrs. Bliss entered into a written contract with Mr. Meyer to sell him the lots for ten thousand dollars, to be paid for in the following manner: $250 when the contract was signed; $500 when the deed was delivered; $400 in thirty days; $400 in sixty days; $450 in ninety days; $1,000 in two years; $1,000 in three years; $1,000 in four years, and $5,000 in five years; and to furnish an abstract of title and to give him a warranty deed, and if the title was found defective, to rectify the defects within a reasonable time, not to exceed thirty days, "but in case such defects in the title can not be cured or remedied within that period, and no extension is had between the parties, this contract is to be null and void."

On April 5, 1893, Mrs. Bliss conveyed the lots by a warranty deed to Mr. Meyer, and he paid her $750 in cash, and gave her notes, as agreed, for the balance, except the note for $5,000, which was placed in the hands of Mr. Leon Block, as hereinafter explained.

An examination of the records disclosed the state of affairs hereinbefore set out as to the release of the deed of trust, and the notice, and thereupon the parties entered into the following written agreement:

"This agreement, made this 6th day of April, 1893, between Lilla L. Bliss and F. C. Meyer, both of Kansas City, Jackson county, Missouri, witnesseth: That whereas, said Lilla L. Bliss did on the 5th day of April, 1893, sell and convey to said Meyer lots eight and nine in block twelve in Dundee Place, an addition to the City of Kansas, Jackson county, Missouri, and as part of the same transaction said Meyer and wife did execute to said Lilla L. Bliss, on April 6, 1893, various notes for a portion of the purchase money for said property, secured by a deed of trust thereon, among which notes is a note for five thousand dollars payable five years after date, with interest from date at the rate of six per cent per annum; and, whereas, there appears upon the records in the recorder's office at Kansas City, Jackson county, Missouri, in book B 8 at page 325, a deed of trust dated January 30, 1883, from Elizabeth G. Williams and Charles F. Williams, her husband, to Edwin E. Wilson, trustee for Dundee Mortgage, Trust and Investment Company, Limited, of Dundee, Scotland, which deed of trust conveys the property above described in trust to secure two notes, dated January 30, 1883, for the sum of fifteen hundred dollars each; and, whereas, said Lilla L. Bliss is unable at this time to produce satisfactory evidence that said notes and deed of trust of 30th of January, 1883, have been paid and cancelled; now, therefore, it is hereby agreed that said note of five thousand dollars above described shall be placed in the hands of Leon Block, and is not to be delivered to said Lilla L. Bliss by him until said two notes of fifteen hundred dollars each are produced and the said Block is satisfied that said two notes have been paid and said deed of trust securing said two notes properly released or cancelled of record.

"Witness the hands and seals of the parties the day and year first above written. As said Meyer has the privilege of paying $1,000 or any multiple thereof upon said $5,000 note at any semiannual interest payment, now if said Meyer should be ready to make any such payment and said Lilla L. Bliss should not then have obtained possession of said $5,000 note, then said Meyer may deposit any such sum with the New England Safe Deposit Company, of Kansas City, Missouri, and said Meyer shall not be required to pay interest upon any sum so deposited. The sums so deposited to be paid over to said Lilla L. Bliss by said Safe Deposit & Trust Company upon the order of said Leon Block.

"Lilla L. Bliss. [Seal.]

"F. C. Meyer. [Seal.]

"I have received the five thousand dollar note above mentioned and agree to hold the same in accordance with above conditions.

"Leon Block."

Mr. Meyer took possession of the property on April 6, 1893. In the transaction Mr. R. L. Yeager acted as attorney for Mrs. Bliss, and Mr. Leon Block as attorney for Mr. Meyer. It was then supposed that there would be no trouble about obtaining the notes, secured by the deed of trust, from Mr. Pratt. Accordingly, and for this purpose, Mr. Yeager went to see Mr. Pratt, who at that time was living on Wyandotte street, between Twelfth and Thirteenth, in Kansas City, and was engaged in the banking business at Springfield, Kansas. Mr. Yeager's testimony of what was said and done was admitted without objection from any one, and is as follows: "I was informed that Mr. Pratt was not at home but would be at home on Saturday night. So, I went to his house on Sunday and he said he thought he had the notes. He knew he had paid them. It went over for a week, perhaps, until the next Sunday, when I saw him again, but he said he could not find the notes anywhere. I then reported that fact to Mr. Block that

it would be impossible to get the notes, as 'Mr. Pratt said they were lost. Then we spoke of getting a release or a quitclaim from the Grove heirs and I sent on and got a deed of release.

"Q. They were the parties who held the notes originally? A. Yes, sir. Mr. Pratt had paid them so I sent to the Groves and got the release.

"Q. You found out that you could not get the notes and so reported to Mr. Block and then he wanted you to get a release? A. Yes, sir. We talked about either that or bringing a suit to cancel; I think Mr. Block will remember that. We talked of that as the shortest way.

"Q. Now, he thinks that quite a number of times afterward he asked you with regard to those notes. What is the fact about that? A. Mr. Block and I do not agree on that, for I told him the notes were lost and I could not get them. It was impossible to produce the notes.

"Q. Then you talked about bringing a suit or getting a release? A. Yes, sir, and this would be of less expense and trouble, as I got the names of all the heirs from Mr. Pratt. I knew from him that Grove was dead.

"Q. Now, has that release been with Mr. Block until this suit was brought? A. Yes, sir; I then went and got it from him."

The release here spoken of was a quitclaim deed from all the Grove heirs to the lots. Mr. Yeager delivered it to Mr. Block, who testifies that it was defective, in that three of the parties acknowledged it before unauthorized officers, and that Mr. Meyer would not be satisfied with it any way, and insisted that his contract called for the production of the notes and the release of the deed of trust, and that he would not accept anything else as a compliance with the contract, and that if the notes were lost or destroyed, and could not be produced, Mr. Meyer was entitled to rescind the sale.

Nevertheless, Mr. Meyer continued to pay the notes for the deferred payments as they fell due, until 1895, when he failed to pay the one thousand dollars that fell due in April, 1895. Mrs. Bliss (who, in the meantime, had married Mr. J. H. Christopher) brought suit therefor, and Mr. Meyer immediately paid it. On October 28, 1896, Mr. Meyer paid Mrs. Christopher the sum of $3,387.50, on account of the said notes. This covered all the notes except the five-thousand dollar note, which was held by Mr. Block, and included the note for $1,000 payable at four years, and which was not then due, and by its terms would not be payable until April 5, 1897.

Thus the matter stood until 1899, and in that year the property had become depreciated forty per cent, so that instead of being worth $10,000, it was only worth $6,000. Mr. Meyer testified that in 1893 he proposed to Mrs. Bliss to give her back the property and that she should give him back the notes. Mrs. Bliss denies this. Mr. Meyer testified that in 1894 he spoke to Mr. Christopher to the same effect. Mr. Christopher denies this and says that at that time he did not even know there were any such notes or deed of trust in existence. However, on March 7, 1895, Mr. Block wrote Mrs. Christopher that from what Mr. Yeager told him, he judged it would be impossible to produce the notes, and that Mr. Meyer wanted to treat her fairly and he therefore proposed to treat the case as though he had gone into possession as her tenant, she to refund him the money he had paid her, with interest, and also such sums as he had paid out for taxes, insurance, repairs and improvements, and to surrender the notes for the deferred payments, and he to execute to her a quitclaim deed to the property, and that he would be willing to pay $600 rent for the first year he had occupied the house and $40 a month thereafter, and if she did not care to repay him the said amounts in cash, he would take a paid up lease on the house for a time sufficient to cover those

amounts.   It does not appear that Mrs. Christopher received the letter, and at any rate she never answered it.

Nothing further appears to have been said or done looking towards an annulment of the sale until June 12, 1899, when Messrs. Ess & Georgen, attorneys for Mr. Meyer, wrote Mr. Christopher, proposing to cancel the trade, and reconvey the property if Mrs. Christopher would pay Mr. Meyer $1,200, and surrender his note for $5,000 that was held by Mr. Block.

Under date of June 28, 1899, Mrs. Christopher declined this proposition.   Thereafter, on July 25, 1899, Mr. Meyer wrote to his attorneys, Messrs. Ess & Georgen, and they forwarded the letter to Mrs. Christopher, in which he said: "At the time when I bought the house, Mrs. Christopher deposited with Mr. Block the note for $5,000 to protect me against damages which might occur to me by failure of her giving a clear title to the property, and a special contract was entered into between her and myself regarding the disposition of the matter."   And after stating that he had performed the contract but that she had failed to make the title good, he stated that he had expended on the property already the following amounts:

Repairs ........ ...... ................. ....$1,200
Taxes, paid six years at $70................. 420
Street paving........................ ........... 209
Insurance, more or less..................... 50
Interest of six per cent for six years on $5,000.. 1,800

Would be total coming to me..............$3,679
Value of rent received...................,...... 3,600

Balance in my favor..................... 79
And amount paid on property................ 5,000

$5,079

And then he added:  "That is the amount which

I am entitled to if Mrs. Christopher wants the property back.''

It does not appear whether or not Mrs. Christopher answered said letter.

From the time Mr. Holmes sent the two notes and deed of trust to Mr. Grove in June, 1886, until the trial of this case on June 20, 1900, nothing was ever heard of said notes or deed of trust; they were never presented for payment to either Mrs. Christopher or Mr. Meyer, and the only trace of them that the diligence of the parties has been able to discover is that Mr. Pratt said he thought he had them, he knew he had paid them, and that he searched for them and could not find them.

This was the status of the matter on November 23, 1899, and on that day Mr. Meyer instituted a suit in equity against Mrs. Christopher and her husband, asking to have the sale of the property rescinded, the deed from Mrs. Christopher to him and his deed of trust to secure the purchase notes set aside, for an accounting for rents, issues and profits, and as to amount paid to Mrs. Christopher, and as to amounts paid by him for repairs, taxes, water, notes, and that the balance due him, with interest, be declared a lien on the land, and that the five thousand dollar note held by Mr. Block and the deed of trust securing the same, be cancelled.

On the 21st of February, 1900, Mrs. Christopher and her husband instituted a suit in equity against Mr. Meyer and his wife, Mr. Block, Mr. Yeager, trustee (under the Meyer deed of trust in favor of Mrs. Christopher), Harriett N. Grove, individually and as sole executrix of the will of Charles C. Grove, deceased, William N. Grove, Clara Grove, Edward B. Grove, Lafayette L. Grove and Hattie A. Grove (who are admitted and proved to be the only heirs of Charles C. Grove, deceased), Edwin E. Wilson, and the Dundee Mortgage, Trust and Investment Company, asking to have the deed of trust and two notes aforesaid made by Elizabeth G. Williams on January 30, 1883, to the Dundee Mortgage,

Trust and Investment Company, declared paid and satisfied and land declared to be free of the lien thereof, that Mr. Block be ordered to turn over to Mrs. Christopher the note for $5,000, held by him as aforesaid, and that the deed of trust securing the same be declared to be a valid lien on the lots and that it be foreclosed and the land sold to satisfy said note for five thousand dollars.

Mrs. Christopher filed an answer to Mr. Meyer's suit which was virtually the same as her petition in her suit against him, and Mr. Meyer filed an answer to Mrs. Christopher's suit which was virtually the same as his petition in his suit against her. Mrs. Grove and the Grove heirs entered their appearance in Mrs. Christopher's suit and filed an answer and consented that a decree might be entered as prayed, upon condition that no costs should be taxed against them. The other defendants in Mrs. Christopher's suit made default. The circuit court dismissed Mr. Meyer's suit against Mrs. Christopher and held that he was not entitled to recover.

In Mrs. Christopher's suit against Meyer et al., the court found the facts to be substantially as herein stated, and entered a decree in her favor as prayed in her petition. From these decrees, Mr. Meyer appealed.

I.

The determination of this controversy depends upon the proper construction to be placed upon the contract of April 6, 1893, with regard to the two notes for fifteen hundred dollars each, made by Mrs. Williams on January 30, 1883, and secured by deed of trust, and with regard to the five-thousand dollar note, dated April 5, 1893, made by Mr. Meyer to the order of Mrs. Christopher, nee Bliss, and placed in the hands of Mr. Block by the contract of April 6, 1893.

The language of the contract of April 6, 1893, upon which Mr. Meyer predicates his claim, is: "It is

hereby agreed that said note of five thousand dollars above described, shall be placed in the hands of Leon Block and is not to be delivered to said Lilla L. Bliss by him until said two notes of fifteen hundred dollars each are produced and the said Block is satisfied that said two notes have been paid and said deed of trust securing said two notes properly released or cancelled of record.''

And the contention of Mr. Meyer is that this contract must be literally and strictly construed, and that as no time is mentioned in the contract for its performance, it was Mrs. Christopher's duty, within a reasonable time, to produce the two fifteen hundred dollar notes and to satisfy Mr. Block that they had been paid and that the deed of trust securing them was properly released or cancelled of record; that failing so to do, it was the privilege of Mr. Meyer to have the sale rescinded and to recover all he had paid Mrs. Christopher together with interest and all expenses for repairs, taxes, insurance, etc.; that this is true even if the notes were destroyed and therefore they could not be produced, for so the contract reads, and if Mrs. Christopher had wished to be excused from producing the notes in case they were lost or destroyed, she should have so stipulated in the contract, and having failed so to do, the court can not make a contract for her by supplying such an excusatory clause; that he is not obliged and can not be compelled to take a cancellation of the notes and deed of trust by a decree of court, because the contract says the notes must be produced, and did not provide for any alternative or equivalent means of securing a release of the deed of trust. Mr. Meyer further claims that under the contract the two fifteen hundred dollar notes had to be delivered into his possession and become his property after they were paid; but the contract does not so provide and, on the contrary, gives no color to this contention. Mr. Meyer further

contends that a decree cancelling the notes and deed of trust would not be as good or safe as the production of the notes, and the release of the deed of trust, for the reason that although the notes were more than twelve years past due when this case was tried, and no demand had been made upon them for over seven years, still they might have passed into the hands of a person under disability against whom the statute of limitations would not run, and therefore they might still be collected, and that the fact that they were not found among the papers belonging to Mr. Grove shows that he had transferred them.

The law is plain that courts can not make contracts for litigants and that a party must show performance, on his part, of a contract before he can recover upon it or compel the other party to perform it. This rule is axiomatic. But the law is equally as well settled that courts construe contracts and ascertain their meaning from all of the provisions of the contract and not from single words or phrases or sentences, and when the intention of the contracting parties is thus ascertained, that intention will be effectuated, unless it violates some inexorable rule of law, which is not the case here.

It is true the contract requires the notes to be "produced," and it is true that it requires that Mr. Block shall be "satisfied" that they have been paid, but it is too apparent for dispute that these steps were intended only as means to an end, and that end was that the deed of trust should be released and the title cleared up.

Neither the production of the notes with the most indisputable evidence that they had been paid, nor the fact that Mr. Block was satisfied that they had been paid, would have had the effect of releasing the deed of trust on the record. It would have been evidence sufficient to procure the cancellation of the deed of trust by a court of equity, but of itself it would not accomplish that end. The contract did not even require that

this evidence should be turned over to Mr. Meyer, as he erroneously states.

The purpose of the contract was to protect Mr. Meyer from loss if Mrs. Christopher did not clear up the title by having the deed of trust released, and the means employed by the contract to afford that protection were to have the note for five thousand dollars placed in Mr. Block's hands to be held by him until the title was cleared up.

This is the interpretation placed upon the contract by the parties for over six years, and this is the interpretation placed upon the contract by Mr. Meyer in his letter to his attorneys, and by them forwarded to Mrs. Christopher, on July 25, 1899, about four months before his suit was begun, for he said: "At the time when I bought the house, Mrs. Christopher deposited with Mr. Block the note for $5,000 to protect me against damages which might occur to me by *failure of her giving a clear title to the property*, and a special contract was entered into between her and myself regarding the disposition of the matter." If there was any room for doubt as to the true meaning and purpose of the contract, this would remove it. [Patterson v. Camden, 25 Mo. 13; Brewing Co. v. Water Works Co., 34 Mo. App. 49; Carter v. Arnold, 134 Mo. 195; Depot Co. v. Railroad, 131 Mo. 291.]

But there is no room for doubt as to the meaning and purpose of the contract. It was to make Meyer whole against loss until the title was cleared up. Meyer wanted a clear title. It is idle to say he wanted the title made clear by only one process of doing so. It was the end and not the means that was necessary or important. That end is as effectually—aye, even more effectually—attained by a decree of a court of equity cancelling the deed of trust, as it is by having the notes produced and the deed of trust released by the act of the parties. The latter is liable to be set aside for mistake or fraud. The decree of court is

final. The purpose of the contract is therefore effectuated, and Mr. Meyer has no ground for complaint. [Mullally v. Greenwood, 127 Mo. 138; Hanna v. Land Co., 126 Mo. 1.]

The fear expressed by Mr. Meyer that the notes may have been negotiated by Grove and may have fallen into the hands of some person who is under a legal disability and who is not a party to this case, and hence, they may yet be collected or enforced, is groundless. The notes were dated January 30, 1883, and were payable on January 1, 1886 and 1888, respectively. They were held by the original payee, the Trust Company, until May or June, 1886, and were then transferred to Grove. At that time the first note was past due, and the statute of limitations had begun to run, and as it began to run against the Trust Company, it would continue to run against all persons acquiring it thereafter, whether they were under disability or not. [Pim v. St. Louis, 122 Mo. 1. c. 666.] As to the other note, the evidence is uncontradicted that it, as well as the first note, was paid. Counsel for Mr. Meyer say, however, that there is no evidence of that fact. They overlook the testimony of Mr. Yeager that Mr. Pratt told him he knew he had paid the notes and at first thought he had them, but was unable to find them. It is said, however, that this is only hearsay. The answer is that Mr. Yeager was permitted to so testify without any objection or exception. It is, therefore, in the case, and is uncontradicted. It appears that Mr. Pratt lived in Kansas City, yet neither party saw fit to call him as a witness. The parties made their own case in their own way, and the court must deal with it as it is made up in the record.

It is a significant fact that Mr. Pratt wrote to Mr. Holmes to ascertain what an assignment of the notes could be had for, and that when Mr. Holmes answered Mr. Pratt's inquiry, Mr. Grove, who Mr. Holmes says lived in the same or in a neighboring place in New York,

sent the exact amount of money that Mr. Holmes had written Mr. Pratt that the assignment could be had for. This fact taken in connection with the fact that the money was received by Mr. Holmes on May 18, 1886, and that on May 21, 1886, Mr. Pratt purchased the property from Mrs. Williams and assumed the payment of the notes aforesaid, and the fact that from that day to this, no one has ever asserted any right under the deed of trust or sought to collect the notes, gives substantial support for an inference of fact that it was Mr. Pratt who really acquired the notes from the Trust Company, and that Mr. Grove only acted for him.

But whatever may be the reason, it is now certain that the notes and deed of trust are barred by limitation, and that there was substantial evidence to support the finding of the trial court that the notes are paid, and, therefore, the judgment of the circuit court in dismissing Mr. Meyer's suit, and in decreeing in Mrs. Christopher's suit that the deed of trust be cancelled, and in ordering Mr. Block to turn over to her the five-thousand-dollar note, and ordering the deed of trust to be foreclosed, was correct. .There was no evidence that Mrs. Christopher had paid any taxes and, therefore, so much of the decree as required Mr. Meyer to pay her any such taxes is eliminated from the decree.

In all other respects the judgment of the circuit court in both cases is affirmed, at the cost of the appellant.

All concur, except *Robinson, J.*, absent.