L. R. SHOEMAKER ET AL., RESPONDENTS, v. GREAT LAKES PIPE LINE CO., APPELLANT.—60 S. W. (2d) 76.

Kansas City Court of Appeals.    May 1, 1933.

*Dan H. Frost* and *Culver & Phillip* for respondent.

*Meservey, Michaels, Blackmar, Newkirk & Eager* for respondents.

SHAIN, P. J.—The plaintiffs, L. R. Shoemaker and Barbara E. Shoemaker, seek in this case to recover damages against the defendant, the Great Lakes Pipe Line Company, a corporation, arising out of a contract for the construction, maintenance and operation of pipe lines for the transportation of oil across the land of plaintiffs.

One pipe line has been constructed and is now in operation. The contract grants privileges to defendant to construct, maintain, and operate other lines across the land in the future.

The contract provides that when any pipe line is completed that the whole damage, for said pipe line, becomes due and payable. The contract further provides that for each pipe line constructed in the future said additional lines shall be laid for a consideration the same as the first.

Exactly the same issues, as is here before us and involving the construction of a contract with exactly the same rights, was before us in H. C. Fulkerson et al. v. Great Lakes Pipe Line Company, a corporation, No. 17725, and handed down in the March call, 1933, not yet officially published.

We conclude in that case and still conclude that the contract entered into between the parties fixed and limited the elements of damages so that same must be determined by the terms of the contract, rather than by the general provisions of the law governing condemnation proceedings.

The granting clause of the contract in issue starts out with an expression of consideration of $1. We conclude that the whole contract must be considered in determining the consideration for the rights granted and conclude that, under the terms of the contract, that the consideration for each pipe line laid, is such damage to crops, fences and premises as may occur by reason of laying, maintaining, operating, altering or removing said pipe line. We conclude further that, that all consideration by way of damage, present and future, as to any pipe line when constructed then becomes due, and that for the construction of any pipe line constructed in the future the consideration, by way of damages, embrace the same elements, that is, the damages for any future pipe line constructed, becomes due when constructed and damages to crops, fences and premises, both present and future, can then be determined on the same basis and including same elements as in this instance.

We further conclude, in the Fulkerson case and so conclude here, that the word *premises* as found in the contract means damages to like items as before enumerated, that is to crops, fences and to other of like nature such as barns, chicken houses, etc.

As the conclusions, and the reason for same, as set forth in the Fulkerson case are the same as in this case, we need not go into them further.

As some of the issues in these cases appear to have arisen for the first time in this State, this court's deliberations, since handing down the Fulkerson case, gives occasion for some expressions herein that will more clearly define the conclusions reached by the court on the issues presented.

In the consideration given to this case, we are not unmindful of what the Supreme Court has said in Prairie Pipe Line Company v. Shipp et al., 305 Mo. 663. In that case the construction of a contract was not involved. It will be noted that it is held in that case that no general rule as to the measure of damages to a landowner caused by the laying of a pipe line had been formed.

In the case at bar, we conclude, that the contract fixes the measure of damage and that the damages must be ascertained in accordance with the contract.

For the above and foregoing reasons the judgment is reversed and cause remanded. *Bland, J.,* concurs; *Trimble, J.,* dissents in a separate opinion.

## DISSENTING OPINION.

TRIMBLE, J.—This case was argued and submitted March 7th, at the March, 1933, term, and in due course was thereafter assigned to me, so that this was originally written as the main opinion, but as my associates dissent, this is now submitted as a dissenting opinion.

Herein, two landowners, a farmer and his wife, sue to recover damages arising from an easement obtained by defendant for, and the laying thereon of, an oil pipe line across their farm of about sixty-seven acres of land in Clinton county, Missouri, under a written contract executed by the parties in regard thereto, called a "Right of Way Agreement" which was duly acknowledged and recorded.

The amended petition on which the case was tried admits plaintiffs having received $57.50 (being at the rate of fifty cents per rod for 115 rods), for the right-of-way, i. e., the value of the land actually used and occupied by the line of pipe, but alleges that the defendant has refused to pay plaintiffs for the damages accruing to them by reason of the laying of said pipe and the damages to the farm as such by reason of the granting of the easement through it. The petition also alleges that defendant has refused to join with plaintiffs in the selection of arbitrators, as agreed in said contract, who should ascertain and determine the amount of said damages, notwithstanding the fact that plaintiffs requested the appointment of arbitrators and have demanded payment of said damages.

The total damages sought in said petition amount to $2,262.50 which, less the $57.50 already paid, is made up of the following items:

1. Damage to three wire fences torn down for a width of thirty feet each in the actual construction and laying of said pipe line ........................................$ 75.00

2. Damage for digging a ditch more than two feet in depth for a distance of 115 rods across said land and by the use of heavy tractors and machinery whereby land along and against the line was so packed as to render it thereafter unfit for cultivation or for grazing purposes for a width of thirty feet along where said pipe line was laid ............$ 40.00

3. Damages for failure to refill the ditch and for the sinking of the earth therein so that it is difficult to cross the same, rendering it dangerous to livestock crossing the land ......$ 50.00

4. Damages for the negligently frightening of fifty head of cattle by defendant's employees, during the construction of said pipe line, said cattle being pastured on said lands where the pipe line was laid, whereby plaintiffs were compelled to remove said cattle from said pasture, to plaintiffs' damage in the sum of ...............................$ 25.00

5. Damages arising from defendant's leaving ridges of earth where the pipe line was laid, whereby plaintiffs were compelled to employ teams, plows and harrows to remove them ............................................$ 15.00

6. Damages to the *whole* of said tract of land, caused by the depreciation in the value thereof, by reason of the granting and existence of said easement, in the sum of .........$2000.00

Defendant, in its answer, admitted that it was, and is, a Delaware corporation organized as a public service corporation and public carrier duly authorized to transact business in the State of Missouri and engaged in the transportation of petroleum products in Missouri and other states; that plaintiffs were and are the owners of the land in question; that the written contract, called the "Right of Way Agreement" was entered into and recorded; that the payment of the fifty cents per rod (being the $57.50 admitted in the petition), was made, and denied "that said tract of land or any part thereof was damaged, or the value depreciated, as a result of the granting of said easement and denies further that the defendant agreed to pay plaintiffs anything for or on account of any alleged depreciation in the value of said land as the result of the granting of said easement" except fifty cents per rod for each rod of pipe line laid. The answer ended with a general denial of each and every allegation.

As defendant, in its brief, makes no contention except as to the 6th item of damage hereinbefore enumerated, i. e., the damage to the tract of sixty-seven acres by reason of the granting and existence of the easement thereover, we need not spend any time over the evi-

dence as to the other items of damage except possibly to say there was evidence to support plaintiffs' claim as to all six items of said damages.

The jury returned a general verdict for plaintiffs and assessed their damages at $930. The defendant has appealed, making, as stated, no fight on anything except the allowance of damages to the tract by reason of the existence of said easement.

Under the allegations of defendant's answer, and by reason of section 1340, Revised Statutes of Missouri 1929, 2 Missouri Statutes Annotated, pages 1533-4, the defendant is a public carrier with the right of eminent domain and the power to condemn a right-of-way to lay their pipe lines. As a prerequisite to the exercise of such power in relation to the land herein involved, defendant was compelled to attempt by contract to agree upon the compensation to be paid. So that the pipe line company, on October 10, 1930, took the initial step required, and, in doing so, did agree, by a contract made with the owners, upon the compensation to be paid for the right-of-way for its pipe line. As the rights of the parties are to be at least partly determined by the written contract between them, it is well to set the same out in full, viz.:

### "Right of Way Agreement.

"For and in consideration of the sum of one dollar ($1) to us in hand paid by Great Lakes Pipe Line Company, a corporation, of Ponca City, Oklahoma, the receipt of which is hereby acknowledged, L. R. Shoemaker and Barbara E. Shoemaker, his wife, does hereby grant to Great Lakes Pipe Line Company its successors or assigns, the right to lay, maintain, operate, re-lay and remove at any time a pipe line or pipe lines for the transportation of oil or oil products, gas and water, and if necessary, to erect, maintain, operate and remove telegraph and telephone lines, with right of ingress and egress to and from the same, on, over and through certain lands situate in the county of Clinton and State of Missouri, and described as follows: Southeast of southwest quarter, south half of south half of northeast of southwest quarter; south half of south half of northwest of southwest quarter; 115 rods section 5, township 55, range 31.

"The said grantor, his heirs or assigns are to fully use and enjoy the said premises except the easement for the purposes hereinbefore granted to the said Great Lakes Pipe Line Company, its successors and assigns.

"The said Great Lakes Pipe Line Company for itself and its successors or assigns hereby covenants to bury the lines of pipes so that the same will not interfere with the cultivation of said premises.

"All damages to crops, surfaces, fences and premises for and because of the laying of each line of pipe and each telegraph and telephone line shall be paid for as soon as said line or lines are completed and shall include maintenance damages, if any. In addition to this there shall be paid on the laying of the first line of pipe an additional compensation at the rate of fifty cents per rod for each rod or fraction thereof of land on these premises, across which said line is laid. Additional lines shall be laid for a consideration the same as for the first. If the amount of damages to fences, crops and premises which may be suffered by reason of laying, maintaining, operating, altering or removing said pipe lines or telegraph and telephone lines, cannot be mutually agreed upon, then same shall be ascertained and determined by three disinterested persons, resident of Clinton county, Missouri, one thereof to be appointed by the owner of the premises, one by Great Lakes Pipe Line Company, its successors or assigns, and the third by the two so appointed as aforesaid, the award of two of such persons being final and conclusive.

"It is understood and agreed that no fencing shall be had of the lands included within this agreement, without further agreement with the then owners of said lands, and that fencing connecting the lands with other lands—may be taken down, during construction of pipe lines or other construction, but at completion of construction, shall then be replaced or rebuilt in as good condition, as the fences were at the time of removal.

"Telephone and telegraph lines provided for herein, shall be installed so as to follow the boundary, or property lines of the lands owned by the subscriber hereto—unless otherwise agreed to, at time of construction or of renewal of lines.

"Dated this 10th day of October—1930.

"(Signed) L. R. SHOEMAKER (seal).

"(Signed) BARBARA E. SHOEMAKER (seal)."

Said written agreement was duly acknowledged, and recorded in the Clinton county recorder's office December 13, 1930.

It will not do to say that, in construing the contract, the laws governing the condemnation of land and the easement have nothing to do with the latter, and that the whole controversy is governed and controlled solely by the contract, unconnected with any consideration of the situation and the circumstances under which the contracting parties acted. Of course, where the rights of the parties in detail are clearly and unequivocally expressed, those rights are to be determined by the written contract between the plaintiffs and defendant, but they were engaged in the matter of agreeing, if possible, on the question of plaintiffs' damages for the defendant's obtaining of the easement sought, which, as heretofore stated, was the *first step* re-

quired by the law governing the exercise of the defendant's right of eminent domain. Hence the subject-matter of damages is as broad as the items of damages allowed by law in condemnation proceedings. What are these items? First, damages for the land actually taken or occupied (which in this case is the strip on, and in which, the line is laid); second, damages to the property along and over said land destroyed or injured by the laying of said pipe; third, the damage to the tract as a whole through which the line or the easement exists. Certainly the whole tract although not actually taken or occupied is damaged. There can be no question but that such an easement, which carries with it the right of *entry* upon the tract and also the right to dig into the line and do whatever seemeth best to the owner of the easement, *does* damage a farm, or the entire tract, described in the contract, and very materially affects its market value. This being so, how can it be truly said that the contract was made by the parties without reference to any damages to the tract as a whole? One of the first rules in the construction of contracts is to place ourselves in the situation of the contracting parties, and evidence is admissible to enable the construing authority to be placed in the position of the contracting parties, thus being enabled to see with the same eyes and judge with the same attitude of mind and reach the true meaning of the contract; and in doing this, if the language of the contract is susceptible of two constructions, one of which makes it fair, customary and such as reasonably prudent men would make, while the other renders it unequitable, unusual or such as reasonable men would not be likely to enter into, the interpretation which makes the contract a rational and probable agreement must be preferred to that which makes it an unfair, unusual and improbable agreement. [Big Muddy Coal, etc., Company v. St. Louis, etc., Coal Company, 176 Mo. App. 407.] And as heretofore set forth in other language, it is important and necessary to consider the law as related to the matter sought to be accomplished. As said in 13 Corpus Juris, paragraph 20, section 514, page 542:

"In arriving at the intention of the parties, where the language of a contract is susceptible of more than one construction it should be construed in the light of the circumstances surrounding them at the time it is made, it being the duty of the court to place itself as nearly as may be in the situation of the parties at the time so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and the correct application of the language of the contract. For this purpose in construing a contract the court will consider the nature of the agreement itself, together with all the facts and circumstances leading up to and attending its execution, the re-

lation and condition of the parties, the. nature and situation of the subject-matter, and the apparent purpose of making the contract."

Of course, the above rule does not apply where the language of the contract is so plain as to leave no doubt as to the meaning of the contract. Moreover, as said in the same section just quoted (13 C. J. 544), matters and "facts of public notoriety *relating to the subject of a contract* must be *presumed* to have been *known* to the parties at the time of making the contract, and the language used *must* be construed in reference to such facts." (Italics mine.)

And again the same work (13 C. J., sec. 508, p. 540) says:

"So where an instrument is susceptible of two conflicting constructions, one of which imputes bad faith or fraud to one of the parties, and the other does not, the latter construction should be adopted. Every contract implies good faith and fair dealing between the parties to it."

Again, on the same page (13 C. J., sec. 509) it is said:

"The *main object* of the contract, or the *purpose which the parties sought to accomplish,* is to be considered in ascertaining their intention, and *particular* parts of the contract must be so construed as to harmonize with such purpose, if possible." (Italics mine.)

Moreover, a contract must be construed as a whole. [13 C. J., par. 4, sec. 486, pp. 525-6; Sconce v. George Surmeyer Lumber Co., 258 Mo. 616; Big Muddy Coal, etc., Co. v. St. Louis, etc., Coal Co., 176 Mo. App. 407; Meyer v. Christopher, 176 Mo. 580.] In Thompson v. Lindsay, 242 Mo. 53, l. c. 72, Judge LAMM says:

"A proper construction of a contract arises on the whole subject-matter—parties, their relations to each other, the object to be subserved by the contract, and the language all considered."

Judge MARSHALL in Meyer v. Christopher, 176 Mo. 580, l. c. 594, says:

"But the law is equally as well settled that courts construe contracts and ascertain their meaning from all provisions of the contract, and not from single words or phrases or sentences, and when the intention of the contracting parties is thus ascertained, that intention will be effectuated, unless it violates some inexorable rule of law."

It is contended that the $1 consideration, expressed in the first and second lines of the right-of-way agreement was the only consideration to be paid for the right-of-way over the premises. It cannot be that the mere formal use and expression of the $1 consideration usually stated in many contracts, nor even the fifty cents per rod mentioned later on, must be understood to cover and include the damages done to the *farm* of sixty-seven acres by reason of the *easement* granted and created through it. The law will not, and we will not,

presume that the defendant was *intending* to get out of paying anything beyond the $1 consideration for the grant it sought for if it was, then this would be a matter of sharp practice and unfair dealing as well as the intentional perpetration of an outrage and fraud upon the plaintiffs by skillfully wording the contract so as to induce them to think they were to be paid such damages which the defendant had no intention of paying. The $1 clause in the contract is nothing more than the usual stereotyped and perfunctory form commonly used, and it means nothing more than that. It was never paid either then or thereafter, and there was no thought of its being paid although the fifty cents each for the 115 rods (corresponding to the land "actually taken" in other condemnation proceedings) was paid. At the time defendant gave its check therefor it specified therein that it was "For R. W. southeast of southwest quarter, south half of south half of north half of southwest quarter, sections 5-55-31, Clinton county, Missouri," the letters R. W. meaning, and can mean only, "Right of Way." And the matter of the *damages* had not yet been reached in the contract, and it says that this fifty cents per rod shall be paid "in addition to" all damages to crops, surfaces, fences *and premises*. The amount of fifty cents per rod for the land actually taken, or to be occupied, by the line, could be calculated then as well as at any other time, and was paid at the signing of the contract; but the *damages* were to be paid, and could only be paid, after the line was *located* and the pipe laid, this for the reason that they could not then be determined, the damages to the tract of land as a tract could not be known or anticipated beforehand any better than the other damages, since, it will be observed, the contract does not specify the precise location or direction of the line when laid. So that by the defendant's conduct, as last above set out herein, being acts in partial performance, have evinced a *practical* construction which defendant *itself* placed on the contract, and this is entitled to great weight in determining the correct construction. [13 C. J., sec. 517, p. 546; Laclede Const. Co. v. T. J. Moss Tie Co., 185 Mo. 25.]

The contract was on a *form* prepared by the defendant Pipe Line Company and was presented to plaintiffs with blanks filled out to make it applicable to the farm in question. If there is any ambiguity in it as to its meaning as to the feature here in controversy, it is to be construed more strongly against the party who prepared it, or employed the words concerning which doubt arises. [13 C. J. 544-5; Grossenbacher v. Daly, 287 S. W. 781; Belch v. Schott, 171 Mo. App. 357; Commercial, etc., Supply Co. v. Missouri Comm. Co., 166 Mo. App. 332.]

Defendant having the right of condemnation, proceeded to effect an agreement with the owners and, on its own prepared form, did

so. With reference to the line to be actually occupied by the pipe, known to be 115 rods, the sum of $57.50 was agreed upon, to be paid at once. With reference to the "*damages*" to crops, surfaces, fences *and premises;* to be paid "in addition to" the sum already paid, which were to be paid in the future when ascertainable, the parties agreed that if they "cannot be mutually agreed upon," then the same should be ascertained and determined by arbitrators; but as defendant refused this when requested, this suit is the only remedy left to plaintiffs.

Both the defendant and the plaintiffs were presumed to know the law and their rights under the law, and they are presumed to have contracted with reference to it. Defendant was attempting to get a right-of-way over plaintiffs' land for a *just consideration.* It had to be either by an agreement as to that compensation and how it should be ascertained, or by force of law, i. e., a condemnation proceeding. It would seem that the compensation should be the same in both methods and the item for which damages could be claimed would be such as the law says may be considered, unless, of course, the contract *clearly* and *unequivocally* shows otherwise, which manifestly it does not in this case.

Since the parties to both sides knew the law and their rights, the purpose, and the object of the contract was *first,* to obtain the right to establish and create the easement and *second,* to fix the compensation, and it would seem that the compensation desired and in mind would be that allowed by our Constitution and decisions. [Sec. 21, Art. 2, Mo. Const., 1 R. S. Mo. 1929, p. 68, 15 Mo. St. Ann., p. 328; Art. 2, chap. 7, R. S. Mo. 1929, p. 557, 2 Mo. St. Ann., p. 1533; Sec. 1344, R. S. Mo. 1929, 2 Mo. St. Ann., p. 1543; Prairie Pipe Line Co. v. Shipp, 305 Mo. 663; Lemon v. Garden of Eden Drainage District, 310 Mo. 171, 1. c. 179; 49 C. J., sec. 3, p. 1328; Texas Empire Pipe Line Co. v. Stewart, 35 S. W. (2d) 627.]

It would seem to be manifest that the contract does not exclude the damages to the tract as a tract which is the same as the "land not taken" in other condemnation proceedings but that it *includes* such damages in the use of the word "premises." So that even if it is conceded that the contract is open to construction, the controversy in this case revolves around the word "premises" as used in this particular contract.

What does the word mean in this contract between a farmer and his wife on the one side, living on their farm, and a Pipe Line Company seeking an easement through it? In that situation the word "premises" means only one thing—the farm concerning which they are contracting. No matter if the dictionary does contain any number of meanings of that word when considered with reference to the

many and varied contexts and subjects which the exigencies of human life may present. One of these meanings is "A distinct portion of real estate; land or lands." [Standard Dictionary, p. 1956.] "In popular usage, the term has come to mean, land and tenements; land or lands: . . . Such use seems now to have the support of widespread and frequent usage." [13 C. J., sec. 3, p. 1328.] The word, in the connection with which it is used herein, should not be defined with the cold technical stiffness of an automaton, or with a meaning applicable only to some situations having no possible relation to the situation of the parties, the subject-matter, or the purpose of their contract.

The contract provides that *in addition to* the consideration hereinabove mentioned as already paid, the defendant shall pay all damages to "crops, surfaces, fences *and premises.*"

In the first paragraph of the contract not a word is said about compensation except the poor little old $1, which was never paid, and was never expected by anybody to be paid, clearly a mere formality. The compensation for the damages is provided for in the clauses that follow. In the said first paragraph granting the easement, it says it is "on, over and through certain *lands*" and then describes or specifies them. Then in the next paragraph, or the last five lines of the first one, it says the owners "are to fully use and enjoy the said *premises* except the easement," evidently referring to the lands just described. In this connection what are the premises, if they are not the land just described?

In the next paragraph the defendant covenants "to bury the lines of pipes so that the same will not interfere with the cultivation of said premises. Here the word certainly and clearly means the farm or the lands described in the contract. Why say "*said* premises;" or, in naming the things for which damages are to be paid, to-wit, "crops, surfaces, fences and premises," why include "premises" when everything else included in the mere laying and installation of the line of pipe is expressed? In other words, if damages are to be paid for "crops, *surfaces,* fences," what else is there to be damaged if the damages are confined merely to the property on and along the line of pipe? The word "premises" in that view, could cover nothing more than is already included. So the word "premises," under the principle that in the construction of a contract no word must be ignored or treated as merely redundant but all should if possible be given its force and effect, *extends* the agreement to pay damages to broader things than the mere property along the line. It is immediately after using the term in this connection, which every farmer would understand as meaning the tract of land or farm, that the word is used to designate the things for injury to which, damages

are to be paid. What reason is there for entertaining the idea that the word "premises" meant *one* thing in the first paragraph in which it occurs and some *other* mysterious, esoteric meaning in the second connection? Even if it was so used with the latter meaning by defendant, the Pipe Line Company should not be allowed to accomplish, by this means, the defeat of plaintiffs' undoubted claim for the inevitable damages to the entire tract or farm by reason of the mere granting and existence of the easement. So far at least as plaintiffs were concerned, they *did* have in mind the damages to the entire tract arising from the mere placing of the easement thereon, even if the other party may have intended to eliminate it, or cover it up by a skillfully, not to say a craftily, worded form of contract. Manifestly, the plaintiffs knew that damages would be done to the farm as a farm and that, if a condemnation suit were resorted to, such damage would be one of the items allowable. It is unthinkable that in a contract agreeing to a method of settlement of such damages without resorting to condemnation, they would allow such damage to be omitted, and that too, even if they did not know the rule of evidence and the way that damage should be shown. They did not have to specifically contract that the damage should be determined by taking the difference in value of the farm immediately before and immediately after the easement was granted, located and occupied. The contract had only to specify that damages to the entire tract, or premises, were included; the *law* provides how the amount of those damages should be ascertained. It is clearly held in this State that where lands are appropriated or subjected to an easement for some purpose, without consent, the damages are the *same* and *proved in the same way* as in condemnation proceedings. [Texas Empire Pipe Line Co. v. Stewart, 35 S. W. (2d) 627.] This cited case is a pipe line case and it holds, not only that damages to the "land not taken," i. e., to the tract as a whole, are recoverable but that the measure of damages is the difference in the reasonable market value of the land before the establishment of the easement and its value immediately thereafter. And this is the measure of damages announced in many cases, among which the following are cited: Coffman v. Saline Valley R. Co., 183 Mo. App. 622, l. c. 635; Wiggins v. St. Louis, Memphis, etc., R. Co., 119 Mo. App. 492, l. c. 495.

Going back for a moment to the main controversy passed on in the first part of this opinion, it should be observed that the contract involved herein by its own use of the word "premises" told the plaintiffs that it meant their lands. In other words, that is the natural and usual meaning of the word in that connection and is so interpreted by the contract itself, and defendant having drawn it, will be held to that meaning.

It is true that in Merchants Building, etc., Co. v. Chicago Exchange Building Co., 71 N. E. 22, 27, it is said that the term "premises" *may* or *may not* include land; which is doubtless true, but how it affords any support or comfort for defendant in this case is difficult to see, for the contract herein considered refers to the lands previously mentioned as *"said premises."*

It will not do to rest the entire ruling contended for by defendant on the fact that the contract in one place where the words "damages to crops, surfaces, fences and premises" are followed by the words "by the laying of each line of pipe." For a little later in the contract it provides that these damages shall be paid for as soon as the line of pipe is completed and shall include *maintenance* damages, if any, which clearly means damage to the land that may accrue to future maintenance of the pipe line. It is said, contrari-wise, that maintenance damages are to be paid when they occur, but the contract herein construed also says maintenance damage is to be included in the damage paid *when line is laid.*

Furthermore, to say that depreciation in market value cannot be said to arise from the granting of the easement or the laying of the line of pipe but results from a different matter, to-wit: from what might be done in connection with its maintenance after the laying of the pipe, is to ignore the law of this State as well as to contradict the actual facts of practical life. For it is well known that men will not pay as much on the open market for a farm burdened with an easement with the right of ingress and egress in another owner, as for the same farm without that burden and annoyance. But whether this be true or not, the contract, in paragraph four, actually provides for the payment of such damage.

In reply to the suggestion that courts cannot write into contracts provisions not put in by the parties to them but can only enforce contracts as written, I may answer: "Quite true, but neither can courts ignore provisions in contracts, and, by so doing, enforce them as appellant would ask." To agree in the contract to pay for damage to the lands and then get the court to strike that out by construction or otherwise, is to work an utterly indefensible and palpable fraud on the owners of the lands.

From what has been said hereinabove, it follows that, as I view the case, the judgment of the learned and experienced judge who tried it should be affirmed, and I so vote. But as my associates hold to the contrary and order the judgment reversed, I respectfully dissent.

I, Francis H. Trimble, one of the judges of the Kansas City Court of Appeals, deem the majority decision of this court in the above entitled cause rendered at this the March, 1933, Term of the Court,

954

to be contrary to the following previous decisions of the Supreme Court of Missouri, to-wit: Prairie Pipe Line Company v. Shipp, 305 Mo. 663; McReynolds v. Kansas City, Clinton, etc., Ry. Co., 110 Mo. 484.

Therefore, in accordance with section 6, article 6 of the Amendment of 1884 to the Constitution of Missouri, I request that the above entitled cause be certified and transferred to said Supreme Court.

This 12th day of May (March Term), 1933.

FRANCIS H. TRIMBLE, Judge.