H. C. FULKERSON ET AL., RESPONDENTS, v. GREAT LAKES PIPE LINE
CO., APPELLANT.—60 S. W. (2d) 71.

Kansas City Court of Appeals.    April 3, 1933.

*Culver & Phillip* and *D. H. Frost* for respondents.

*Meservey, Michaels, Blackmar, Newkirk & Eager* for appellant.

SHAIN, P. J.—This is an action for damages brought by H. C. Fulkerson and Ida L. Fulkerson, plaintiffs below, against the Great Lakes Pipe Line Company, a corporation, defendant below.

The plaintiffs are the owners of one hundred and sixty (160) acres of land in Clinton County, Missouri. The defendant is a corporation engaged in the transportation of oils by means of a pipe line.

In October, 1930, the defendant secured an instrument of writing from the plaintiffs, wherein and whereby the plaintiffs conveyed a right to the defendant to construct and maintain pipe lines, over and across the plaintiffs' said land. Privileges concerning telephone and telegraph poles were also granted, but same is not in issue here.

It appears that the defendant, before the bringing of this suit, had constructed one line of pipe in a diagonal direction through the land and were operating the same for the transportation of oils. The controversy arose over the amount of damages that the plaintiffs were entitled to under the contract, at the time one pipe line was completed and in operation and this suit involves that issue.

The trial was by jury in the circuit court and resulted in judgment for the plaintiffs in the total sum of six hundred dollars ($600). From this judgment, the defendant appealed.

The issue, as above stated, raised in the appeal involves the construction of the contract, which we here set out in full, to-wit:

## "PLAINTIFFS' EXHIBIT NO. 1.

### "Right of Way Agreement.

"For and in consideration of the sum of one dollar ($1) to us in hand paid by GREAT LAKES PIPE LINE COMPANY, a corporation, of Ponca City, Oklahoma, the receipt of which is hereby acknowledged, H. C. Fulkerson and Ida L. Fulkerson, his wife, does hereby grant to GREAT LAKES PIPE LINE COMPANY, its successors or assigns, the right to lay, maintain, operate, re-lay and remove at any time a pipe line or pipe lines for the transportation of oil or oil products, gas and water. and if necessary, to erect, maintain, operate and remove telegraph and telephone lines, with right of ingress and egress to and from the same, on, over and through certain lands situate in the county of Clinton and State of Missouri and described as follows:

"Northeast Quarter 160 rods Section 29, Township 56, Range 31.

"The said grantor, his heirs or assigns, are to fully use and enjoy the said premises except to easement for the purposes hereinbefore

granted to the said GREAT LAKES PIPE LINE COMPANY, its successors and assigns.

"The said GREAT LAKES PIPE LINE COMPANY for itself and its successors or assigns hereby covenants to bury the lines of pipes so that the same will not interfere with the cultivation of said premises.

"All damages to crops, surfaces, fences and premises for and because of the laying of each line of pipe and each telegraph and telephone line shall be paid for as soon as said line or lines are completed and shall include maintenance damages, if any. In addition to this there shall be paid on the laying of the first line of pipe an additional compensation at the rate of fifty cents per rod for each rod or fraction thereof of land on these premises, across which said line is laid. Additional lines shall be laid for a consideration the same as for the first. If the amount of damages to fences, crops, and premises which may be suffered by reason of laying, maintaining, operating, altering or removing said pipe lines or telegraph and telephone lines, cannot be mutually agreed upon, then same shall be ascertained and determined by three disinterested persons, resident of Clinton county, Missouri, one thereof to be appointed by the owner of the premises, one by GREAT LAKES PIPE LINE COMPANY, its successors or assigns, and the third by the two so appointed as aforesaid, the award of two such persons being final and conclusive.

"It is understood and agreed that no fencing shall be had of the lands included within this agreement, without further agreement with the then owners of said lands, and that the fencing connecting the lands with other lands—may be taken down, during construction of pipe lines or other construction, but at completion of construction, shall then be replaced or rebuilt in as good condition, as the fences were at the time of removal.

"Telephone and telegraph lines provided for herein, shall be installed so as to follow the boundary or property lines of the lands owned by the subscriber hereto—unless otherwise agreed to, at time of construction or of renewal of lines.

"Dated this 10th day of October, 1930.
"(Signed) H. C. FULKERSON (Seal).
"(Signed) IDA L. FULKERSON (Seal)."

In the trial of this case below, the plaintiffs contended, and the court so held, that the measure of the damages under the contract included damages for the depreciation of the whole tract, by reason of the easement granted. On the other hand, the defendant presented that the plaintiffs, under the terms of the contract, were only entitled to recover for damages done and suffered by the defendant to crops, fences and surface of the land, by reason of the construction.

The cause being tried below, on the plaintiffs' theory, the defendant presents for our consideration an assignment of eleven specifica-

tions of errors. The first six of these specifications are assignment of error based upon objection and exception to evidence tending to prove damages for depreciation of the whole tract, by reason of the easement. The other specifications are objections and exceptions of declaration of law given on the plaintiffs' theory of elements of damage or rejection of declarations of law asked on the defendant's theory. As the construction of the contract, in respect to the issue presented, will determine all matters presented in the assignment, we need not set them out in full.

The contract in issue grants very extensive privileges to the defendant and the case presents marked differences from that for condemnation of land for right of way purposes, wherein a strip of land is taken and the land is left divided into separate tracts. The differences lies in the fact, that the pipes are to be laid at sufficient depths so that the surface is left to be used and occupied by the owner as a whole, subject alone to such rights of ingress and egress and duties to be performed as are requisite to the maintenance and operation of the pipe line.

The parties, in this instance, have undertaken by a written contract to specify the elements of damages and the time and conditions under which they shall be paid.

The solving of the problem, presented in this case, depends upon the interpretation to be given to the word ''premises'' as found in its context in the contract in issue.

The English language presents its difficulties, in that many words have different meanings in accordance to the context wherein found. In Words and Phrases, original series in volume 6 at pages 5509 to 5513, the word ''premises'' is presented under sixteen subheads, wherein the many shades of the meaning of this word, according to the context where found, is discussed.

As used in an instrument of writing, the word has been thus defined: ''Premises, in an instrument of writing, implies a reference to previous matter contained therein and concerning which something is proposed.'' [Lentona Fire Insurance Co. v. Murrel, 102 Pa. 89, 93.]

In conveyancing, ''The popular word premises is sometimes used for land; but, when the *habendum* of a deed is of the above described premises, it means what the deed purports to convey.'' [Holbrook v. Debo, 99 Ill. 372, 381.]

In 22 Am. & Eng. Ency. Law (2 Ed.), at page 1175, the word ''premises'' is thus defined:

''The word 'premises' means that which is before; introduction; statements previously made. The word in an instrument of writing implies a reference to previous matter contained therein, and concerning which something is proposed. In common parlance the term is used to signify land with its appurtenances. But its usual and appropriate meaning in conveyances is the thing demised or granted

by the deed. Thus, the term refers to the right, title or interest conveyed and not to the land itself."

In the instrument before us, the word "premises" is not found in the granting clause but in that clause of the contract that specifies those things for which damages, by way of compensation, shall be given.

Gathered from the phraseology of the contract, all damages contemplated are limited to damages, "to crops, fences and premises . . . and shall include maintenance damages, if any." Gathered from the language in the same paragraph, wherein the above is found, we must conclude further that the damages contemplated in the contract are damages that arise, "by reason of laying, maintaining, operating, altering or removing said pipe lines, etc."

The contract provides for construction, operation and maintenance of pipe lines that may be put in, in the future. However, it is provided that when any line is completed then the whole damage, incident to that pipe line, becomes due and payable.

The solution of the whole issue depends upon the meaning of the word "premises" as used in the contract.

In giving interpretation, it must be kept in mind that in giving construction, we must so interpret as to harmonize the word in its meaning to conform to the intention of the parties, as gathered from the whole context of the instrument and as expressed in the instrument. If the meaning is expressed in the contract, we have no authority to make a new contract based upon the assumption that some party to the contract gave to the word a different meaning.

In connection herewith Lord Tenderden's rule, to the effect that, where particular words of description are followed by general terms the latter will be regarded as referring to the things of like class, with those particularly described, has application.

When the contract in issue is construed in the light of the best known rules, we cannot help but conclude that the word "premises," as used in the contract, refers back to things of like class as crops, surfaces, fences and the like and not to the land.

We find no case reported, from our Missouri courts, wherein the exact issue, as is herein presented, has been determined. However, the appellant herein cites a case from the United States court that is directly in point and wherein the contract is identical with the one before us. [Daniel S. O'Connor and Mary O'Connor v. Great Lakes Pipe Line Company et al.] Appeal from the District Court of the United States for the Western District of Missouri.

The opinions of Judge Otis, Judge for the Western District of Missouri, 2 Fed. Supp. 721, and the opinion of the United States Circuit Court of Appeals, 63 Fed. (2d) 523, are set out in full in appendix to the appellant's brief.

This court agrees with the opinion, in the O'Connor case above, in

so far as the question of damages resulting from the depreciation of the whole tract is concerned. In other words, we conclude that the word, "premises," is used as a general term following specific terms and that it should be limited to things of like nature, as those set out.

The O'Connor case, however, does not dispose of all the issues presented in this case.

The defendant presented its case below and is now contending that the plaintiffs are only entitled to recover in this action for damages, done by the construction, to crops, fences and surface. The defendants' refused instructions are drawn upon the above theory. In passing upon this matter, it becomes necessary to determine as to matters for which compensation by way of damages are provided in the contract. The contract in issue provides for the laying of as many pipe lines across the land as suits the desires and needs of the grantee. The contract, however, provides that when any line is completed and in operation all the damages incident thereto, under the terms of the contract, are due and payable. If additional lines are laid, they are laid for a consideration the same as the first.

It follows, that no damages can be collected for in this action based upon construction in the future. However, all damages incident to the laying of the first line are now due and payable. That damage, as before stated, is for crops, fences and surface or other items of like nature that have been destroyed or injured. If the contract stopped here, the contention of the defendant would be tenable. However, the contract provides for damages that may be suffered, "by reason of laying, maintaining, operating, altering or removing."

All damages for and because of all above are payable on the completion of any pipe line. We, therefore, conclude that the plaintiff is entitled, in this action, to recover for future damages incident to maintaining, operating, altering, removing, etc. Incident to all of the above is the right of ingress and egress, the right to remove the pipe line if the grantee so desires. The contract certainly provides that damages for all of these elements accrue upon the completion of any pipe line. However, as the contract provides for future damages based upon future construction, the same to accrue when the future construction is completed, it follows that all damage to the whole tract, for the easement, cannot be recovered herein.

The defendant, under the contract, has absolute right to go upon the one hundred and sixty (160) acre tract and maintain, alter or tear out its pipe line whenever it so desires to do so, and damages suffered by reason of said right are contemplated by the terms of the contract. We conclude that the measure of damages, to-wit: The difference in value of the 160-acre tract before and after the granting of the easement or the physical laying of one pipe line is not the measure of damages, but that damages are recoverable only for crops, surface, fencing and the like that were damaged in the construction

and for such further and other damages, if any, as from all of the facts and circumstances in evidence, may be found as reasonably due as compensation for injury to crops, surface, fences and the like, if any, by reason of operation, maintenance, altering or removing of the pipe line after constructed, including ingress and egress incident thereto.

We cannot construe this contract as constituting provision for a separate cause of action in the future for every injury that may arise by reason of operation, maintenance, altering or removing of the pipe line. Such a construction would be contradictory of the plain language of the contract, wherein it is expressly provided that all damages that may be suffered to fences, crops and premises, by reason of things permitted to be done and performed, are to be compensated for when a line is completed. The fact that a present estimate of such damage is difficult is due to the acts of the contracting parties, who have seen fit to depart from the ordinary method of ascertaining damages as provided in condemnation suits for rights of way, and have substituted a measure of damage based upon present injury to crops, surface, fences and premises (things of like nature, etc.) by reason of construction and for damages that may be suffered, by reason of operation, maintenance, altering or removing, which is necessarily in the future.

We, therefore, conclude that it was error to permit evidence as to the estimated value before and after construction as the measure of damage, in that this evidence left out of consideration the very elements of damage provided for under the contract, to-wit: Present damage "to crops, fences, surface and premises," by reason of construction and future damage "to crops, fences and premises," which may be suffered by reason of maintaining, operating, altering or removing of said pipe line. Also, said measure of damage is inconsistent with damages for future construction for which damages accrue.

We do not decide that the matter of depreciation of the tract is an improper element of damage, but do decide that depreciation does not result from the same causes as in right of way easement, wherein the surface of the land is taken for use with resulting segregations of tracts, loss of use of land and maintenance, extra fences and like matters, but must arise, as specifically limited by the contract, from what the contract provides may be done after the pipe line has been constructed, to-wit: operation, maintenance, altering and removing. The plaintiffs should not be permitted to recover for the full depreciation by reason of an easement, under the terms of the contract, providing like damage for construction of like pipe lines.

We further conclude, that instruction "A," given on behalf of the plaintiff, is in error, in that it submits recovery of damages by way of full depreciation of the whole tract as in condemnation for right

of way, which for reasons above given is not permissible under the terms of the contract in issue.

The defendant complains of the court's refusal to give instructions A, B, and C offered by it. These instructions are all drawn upon the theory, that the plaintiffs were entitled to no damages in this proceeding in contemplation of rights to be exercised by it in the future, touching the pipe line now constructed. We find no error in the court's refusal to give same.

The cause is reversed and remanded. *Bland, J.*, concurs; *Trimble, J.*, dissents in separate opinion.

I, FRANCIS H. TRIMBLE, one of the Judges of the Kansas City Court of Appeals, deem the majority decision of this Court in the above entitled cause rendered at this the March, 1933, Term of the Court, to be contrary to the following previous decisions of the Supreme Court of Missouri, to-wit: Prairie Pipe Line Company v. Shipp, 305 Mo. 663; McReynolds v. Kansas City, Clinton, etc., Ry. Co., 110 Mo. 484.

Therefore, in accordance with section 6, article 6 of the Amendment of 1884 to the Constitution of Missouri, I request that the above entitled cause be certified and transferred to said Supreme Court.

This 12th day of May (March Term), 1933.

FRANCIS H. TRIMBLE, Judge.

## DISSENTING OPINION.

TRIMBLE, J.—No doubt the rights of the parties hereto are to be determined by the written contract between them. But the question is, what does the contract mean? Does it cover damage to the entire tract by reason of the creation of the easement across it. There is no question but that such an easement *does* damage to a farm affecting its market value very materially.

It should be noted that the contract is on a *form* prepared by the defendant Pipe Line Company and brought to plaintiffs, with blanks filled out to make it applicable to the farm in question. If there is any ambiguity in it as to what it means as to the features here in controversy, it is to be construed more strongly against the party who prepared it. [13 C. J., pp. 544-5; Commercial Electrical Supply Co. v. Missouri Commission Co., 166 Mo. App. 332.]

The whole issue, it seems to me, revolves around what the word "premises" means in a contract between two people, *farmers* living on their farm, and a Pipe Line Company seeking an easement through it. In that situation the word "premises" means only one thing—the farm concerning which they are contracting. No matter if the dictionary does contain any number of meanings of that word, when considered with reference to the many and varied contexts and subjects which the exigencies of human life may present. One of these

meanings is "A distinct portion of real estate; land or lands;" Standard Dictionary, p. 1956. The word should not be defined with any cold, technical meaning applicable only to some situations having no possible relation to the situation of the parties and the subject-matter of their dealing.

It cannot be that the mere formal use of the $1 consideration usually expressed in many contracts, nor the fifty cents per rod, must be understood to solely cover the damages done to the *farm* by reason of the *easement* created through it, an easement which will allow as many pipe lines in as many directions and locations as defendant may see fit. This is true not because of the number and ubiquitousness of the lines, but because the contract provides that, *in addition* to the above consideration, "all damages to crops, *surfaces,* fences and *premises* . . . shall be paid," etc. In the third paragraph where this word is *first* used it clearly means the *farm* and is not a general term including merely the specific things, "crops, surfaces, fences," preceding it.

In this paragraph the defendant covenants "to bury the lines of pipes so that the same will not *interfere with the cultivation of said premises.*" Here the word clearly means the farm. Why include *"premises"* when everything else, included in the mere laying of the lines, is covered? If damages are to be paid for "crops, *surfaces,* fences," what else is there to be damaged if the damages are confined merely to the property along the pipe line? The word "premises" in that view, could cover nothing more than is already included. So the word "premises" extends the agreement to pay damages to things broader than the mere property along the line. It is immediately after using the term in this connection, which every farmer would understand as referring to the land or farm, that the word is used to designate the things for injury to which damages are to be paid. What ground is there for entertaining the idea that the word meant one thing in the *first* connection and some mysterious, esoteric meaning in the *second?* Even if it was so used with the latter meaning by defendant, the Pipe Line Company should not be allowed to accomplish by this means the defeat of plaintiffs' undoubted claim for the *certain* damages to accrue to the *farm* by reason of the mere *existence* of the easement.

It seems to me that, so far at least as plaintiffs were concerned, they *did* have in mind the damages to the entire tract arising from the placing thereon of the easement, even if the other party sought to eliminate or cover it up by a skillfully worded form of contract. The plaintiffs manifestly knew that damage would be done to the farm as a farm, even if they did not know the manner of the rules of evidence by which that damage should be shown.

I, therefore, respectfully dissent.