H. C. FULKERSON and IDA L. FULKERSON v. GREAT LAKES PIPE LINE COMPANY, Appellant.—75 S. W. (2d) 844.

Court en Banc, October 13, 1934.*

*NOTE: Opinion filed at May Term, 1934, May 17, 1934; motion to modify opinion filed; motion overruled at September Term, October 13, 1934.

*Charles M. Blackmar, Samuel D. Newkirk* and *Kenneth E. Midgley* for appellant; *Merservey, Michaels, Blackmar, Newkirk & Eager* and *Booher & Wolverton* of counsel.

*Daniel H. Frost* and *Culver & Phillip* for respondents.

COOLEY, C.—Action for damages claimed by plaintiffs because of the laying of a pipe line across their farm by defendant. Plaintiffs obtained a judgment for $600 from which defendant appealed to the Kansas City Court of Appeals which, by a divided opinion, reversed the judgment and remanded the cause. [Fulkerson v. Great Lakes Pipe Line Co., 60 S. W. (2d) 71.] Upon the request of the dissenting judge, who deemed the majority opinion in conflict with certain decisions of this court, the Court of Appeals, following the constitutional mandate, certified the cause to this court.

Plaintiffs are owners of 160 acres of improved farm lands in Clinton County, Missouri, occupied by them for farming purposes and the handling of stock. Defendant is a corporation engaged in transporting oil and oil products through Missouri. In October, 1930, defendant procured from plaintiffs a right of way agreement giving defendant the right to lay pipe lines across plaintiffs' said land. As this case turns upon the construction of that contract we set it out in full:

### "RIGHT OF WAY AGREEMENT.

"For and in consideration of the sum of One Dollar ($1.00) to us in hand paid by GREAT LAKES PIPE LINE COMPANY, a corporation, of Ponca City, Oklahoma, the receipt of which is hereby acknowledged, H. C. Fulkerson and Ida L. Fulkerson, his wife, does hereby grant to GREAT LAKES PIPE LINE COMPANY, its successors or assigns, the right to lay, maintain, operate, re-lay and remove at any time a pipe line or pipe lines for the transportation of oil or oil products, gas and water, and if necessary, to erect, maintain, operate and remove telegraph and telephone lines, with right of ingress and egress to and from the same, on, over and through certain lands situate in the County of CLINTON and State of Missouri, and described as follows:

"Northeast Quarter 160 rods, Section 29, Township 56, Range 31.

"The said grantor, his heirs or assigns are to fully use and enjoy the said premises except the easement for the purposes hereinbefore granted to the said GREAT LAKES PIPE LINE COMPANY, its successors and assigns.

"The said GREAT LAKES PIPE LINE COMPANY for itself and its successors or assigns hereby covenants to bury the lines of pipes so that the same will not interfere with the cultivation of said premises.

"All damages to crops, surfaces, fences, and premises for and because of the laying of each line of pipe and each telegraph and telephone line shall be paid for as soon as said line or lines are completed and shall include maintenance damages, if any. In addition to this there shall be paid on the laying of the first line of pipe an additional compensation at the rate of 50 cents per rod for each rod or fraction

thereof of land on these premises, across which said line is laid. Additional lines shall be laid for a consideration the same as for the first. If the amount of damages to fences, crops and premises which may be suffered by reason of laying, maintaining, operating, altering or removing said pipe lines or telegraph and telephone lines, cannot be mutually agreed upon, then same shall be ascertained and determined by three disinterested persons, resident of Clinton County, Missouri, one thereof to be appointed by the owner of the premises, one by GREAT LAKES PIPE LINE COMPANY, its successors or assigns, and the third by the two so appointed as aforesaid, the award of two of such persons being final and conclusive.

"It is understood and agreed that no fencing shall be had of the lands included within this agreement, without further agreement with the then owners of said lands, and that fencing connecting the lands with other lands—may be taken down, during construction of pipe lines or other construction, but at completion of construction, shall then be replaced or rebuilt in as good condition, as the fences were at the time of removal.

"Telephone and telegraph lines provided for herein, shall be installed so as to follow the boundary or property lines of the lands owned by the subscriber hereto—unless otherwise agreed to, at time of construction or of renewal of lines.

"Dated this 10th day of October, 1930."

About May, 1931, defendant laid a pipe line across plaintiffs' land, whereby certain damage was done to plaintiffs' fences, crops and the surface of the land along the pipe line. The pipe is two and a half or three feet beneath the surface and does not now interfere with cultivation of the land. For a time a ridge of earth was left and in some places the filled-in earth over the pipe sank, leaving depressions. The ridges and depressions have been leveled and now present no obstacle to the use of the surface. Plaintiffs' petition seeks recovery specifically for the damage to the fences, the corn crop and grass destroyed, damage to the surface of the land occasioned by the ridges and depressions above referred to and the trampling and packing of the soil, all of which are itemized, and in addition damages for depreciation in the "market value and the actual value" of plaintiffs' said tract as a whole "as a result of the grant of said easement and the rights therein given defendant and its assigns and the construction and maintenance of said pipe line."

The case was tried and submitted to the jury on the theory that plaintiffs were entitled to recover for the alleged depreciation in value of the entire tract on account of the grant and the existence of the easement, and plaintiffs were permitted to recover such depreciation, which their evidence, introduced over defendant's objections, tended to show, in addition to the specific damages to fences,

crops and surfaces. Evidence was admitted and instructions were given and refused on that theory. Plaintiffs' evidence tended to prove the above mentioned specific items of damage and there is no controversy over them on this appeal. The fifty cents per rod has been paid. The controversy here is over the question of plaintiffs' right *vel non* to recover damages for depreciation in value of the tract due to the grant and existence of the easement.

Plaintiffs cite cases, such as Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 267 S. W. 647, prescribing the rule for recoverable damages in condemnation cases. Such cases are not in point. The parties here did not invoke the statutory condemnation proceedings but by voluntary written contract fixed their respective rights and obligations. No fraud or overreaching is charged. The contract is not unlawful and the rights of the parties must be gauged thereby.

The question at issue hinges on the meaning and effect of the word "premises" as used in the sentence: "All damages to crops, surfaces, fences and premises for and because of the laying of each line of pipe and each telegraph and telephone line shall be paid for as soon as said line or lines are completed and shall include maintenance damages, if any." Absent that word so used it would be quite clear that plaintiffs' claim for depreciation in market value on account of the granting or existence of the easement could not be sustained. The easement, "the *right* to lay, maintain, operate, relay and remove at any time a pipe line or pipe lines," is expressly granted in the first paragraph of the contract. True, the consideration there named is nominal, one dollar. In the fourth paragraph a further consideration of fifty cents per rod of line laid is provided. That is an actual consideration and is to be paid regardless of whether damage results or not. Thus by the terms of the contract the grant of the easement if used is compensated apart from any damage that may result to the land and its appurtenances from acts done in the exercise of the right granted. But the parties contemplated that in doing the things which the contract granted defendant the right to do the latter might damage plaintiffs and they provided that plaintiffs should be compensated for such damage. The damage there provided to be paid is not for or because of the granting or the existence of the easement or the *right* to go upon the land and lay, maintain, operate, re-lay and remove pipe lines, but for and because of the *laying* of each line of pipe. Were it not for the use of the word "premises" in that connection there could be no question as to the kind of things to which the damages there provided for referred.

In construing the contract its words should be taken in their ordinary sense and the mutual intention of the parties ascertained from the language of the contract and the facts and circumstances

attending its making. [O'Connor v. Great Lakes Pipe Line Co. (C. C. A.), 63 Fed. (2d) 523.] The rule is thus stated in Donovan v. Boeck, 217 Mo. 70, 87, 116 S. W. 543:

"But one main rule is common to the construction of all contracts and to it all others must give way. That rule is to get at the meaning of the contract and enforce its true intendment as judicially gathered from all its four corners. To this end it is elementary that the subject-matter of the contract, the relations of the parties to that subject-matter and the ordinary meaning of the language used in the contract, pass in review."

The word "premises" has many meanings and uses, as pointed out in the O'Connor case. It may be used to describe the fee of land (Old South Assn. v. Codman (Mass.), 97 N. E. 766, 767) or it may refer to the right, title or interest conveyed and not to the land itself. [People ex rel. Bryan v. State Board of Tax Commrs., 124 N. Y. Supp. 711, 713; Merchants' Bldg. Imp. Co. v. Chicago Exch. Bldg. Co. (Ill.), 71 N. E. 22, 27.] As popularly used it is more often understood to mean the land itself and its appurtenances. In Sands v. Kaukauna Water Power Co., 115 Wis. 229, 232, 91 N. W. 679, 680, it is said:

"All the law dictionaries recognize that at this day 'premises' generally speaking, when reference is made to realty, in the popular sense, means land and appurtenances thereto."

A similar meaning was given the word in McSherry v. Heimer, 132 Minn. 260, 263, 156 N. W. 130. See for suggestion of its varied uses and that the meaning to be given it depends upon the circumstances in which it is used, O'Connor v. Great Lakes Pipe Line Co., supra, and 49 Corpus Juris, page 1328, section 3. In the instant case we are convinced the term was used in the above-quoted sentence relating to damages as referring to physical damages to the land itself and its appurtenances rather than in the broader sense of including plaintiffs' estate, title or interest. It was evidently so used in the paragraph immediately preceding that sentence, providing that the pipe lines shall be so buried as not to interfere with "cultivation of said premises."

Plaintiffs argue that since crops, surfaces and fences are specifically mentioned in the quoted provision there is left no meaning to be attributed to the word "premises" except the broader meaning contended for by them. We think otherwise. Of course it must be presumed the parties intended that term to have some meaning and effect. It does have a meaning and effect consistent with the terms, crops, surfaces, fences, and not constituting mere redundancy, if it is construed to mean the land itself and its appurtenances. Appurtenances include more than the crops, surfaces and fences mentioned, e. g., trees, buildings, etc., and it would have been difficult if

not impossible to foresee and enumerate specifically all of such things that might be damaged. Instead of attempting to do so the parties used an inclusive term apt to embrace all such things.

The case of O'Connor v. Great Lakes Pipe Line Co., supra, is on all fours with the case at bar. The contract there construed was identical, except for names and description of land, with the one in this case and the plaintiffs there claimed damages of the same character and on the same theory as in this case. The United States District Court for the Western District of Missouri, in which the case had been tried, had refused to submit to the jury the question of damages for the alleged depreciation of the farm by the grant of the easement. In affirming the judgment the Circuit Court of Appeals, after setting out and analyzing the contract and calling attention to the varied uses of the word "premises," said, 63 Fed. (2d) l. c. 526:

"Applying this test to the contract here, can it fairly be said that it was the intention of the parties by the use of the term 'premises' that recovery could be had for the difference in market value of the entire farm before and after the granting of the easement, or before and after the laying of any particular line of pipe?

"The damage, if any, for which payment was to be made was provided by the contract. It was to crops, surfaces, fences, and premises, not by the granting of the easement, but by 'the *laying* of *each* line of pipe.' The contract provides for burying the line of pipe so as not to interfere with the cultivation of the whole farm. If the amount of damages to the fences, crops, and premises by reason of the laying of each line of pipe cannot be determined, etc., then a method is provided so to do. If any new line is laid, plaintiffs are to be paid for all the physical damage to crops, surfaces, fences, and premises. All damage done in making repairs is to be paid, maintenance damages when they occur are to be paid, and plaintiffs are to receive a compensation of 50 cents a rod for all pipes laid. We see nothing ambiguous about this. Depreciation in the market value of the land was evidently not in the mind of either party or different language would have been used. The agreement nowhere refers to this.

"Whether plaintiffs suffer any disadvantage by reason of having made a contract for the laying of the pipe lines instead of compelling the Pipe Line Company to resort to condemnation is immaterial here. No fraud or overreaching is charged.

"The trial court refers in its opinion to the association of the word 'premises' with the words 'crops, surfaces and fences' which precede the word 'premises,' and holds that the word 'premises' refers to things of a like nature, such as buildings, growing trees, etc., and that these are what was intended, that the use of the general word 'premises' preceded by the specific words conveys the inference that

such use is intended to mean things of a like class or character. In other words, the well-known rule of *ejusdem generis*. The rule is stated in Swift & Co. v. Columbia Ry. Gas & Electric Co. (C. C. A. 4), 17 Fed. (2d) 46, 48, 51 A. L. R. 983, as follows: 'And it is well settled that in such case the rule of construction known as Lord Tenderden's rule is applicable, that where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described —*ejusdem generis*.' [See, also, Pulom v. Jacob Dold Packing Co. (C. C.), 182 Fed. 356; Brunson v. Carter Oil Co. (D. C.), 259 Fed. 656; Southern Surety Co. v. Town of Greeneville (C. C. A. 6), 261 Fed. 929; City of St. Louis v. Laughlin, 49 Mo. 559.] Calling upon that principle to help in the construction of this contract, it is apparent that the term 'premises' is used as a general term following the specific terms, crops, surfaces, fences, and that it should be limited to the things of a like nature, as the court aptly pointed out. It may fairly be said we think to refer to the land and its appurtenances necessarily used in the laying of the pipe lines or in repairing or maintaining the same.

"Plaintiffs seek to recover damages claimed to be caused by the granting of the easement. It is true this was conveyed for a nominal consideration, but the damages to be paid plaintiffs were clearly contemplated by the contract to be those caused by the laying of each line of pipe, including maintenance damages, if any. We are satisfied that the trial court was right in the construction of this contract, and the judgment is affirmed."

We think the court correctly construed the contract in the O'Connor case which, as above stated, is the same as the one here involved, and that the learned trial court in this case erred in admitting evidence and submitting the case to the jury on the theory that plaintiffs were entitled to recover damages for depreciation in value of the farm caused by the granting or the existence of the easement. This view requires reversal of the judgment. Since the giving and refusal of instructions were predicated on that theory and, if tried again, the case will be tried on a different theory, further reference to the instructions and evidence is unnecessary.

For the guidance of the trial court in the event of another trial it is necessary to refer more specifically to a question discussed in the majority opinion of the learned Court of Appeals. It is there held in substance that plaintiffs are entitled to recover in this action for damages to crops, etc., that may result in the future from maintaining, operating, altering or removing the pipe line which has been constructed. We do not so construe the contract. It provides that such damages "for and because of the *laying* of each line of pipe," including maintenance damages, if any, are to be paid upon

completion of such pipe line. It further provides that: "If the amount of damages to fences, crops and premises which may be suffered by reason of laying, maintaining, operating, altering *or* removing said pipe lines . . . cannot be mutually agreed upon, then same shall be ascertained and determined by three disinterested persons," etc. (Italics ours.) Such damages may never occur. If they should no one can now know or estimate the amount thereof. Obviously it would be impossible for arbitrators or for a court to "ascertain and determine" in advance the amount of damages that may in the future be done to crops, fences, surfaces and premises, giving the term "premises" the meaning we attribute to it as used in this contract. To attempt to do so and to allow therefor in this action would be to make an award based solely upon the rankest speculation. Such damages can be ascertained and determined and are to be paid or recovered only if and when they occur. Reading the contract as a whole we are satisfied the parties so intended and understood it and that it should be so construed. The judgment of the circuit court is reversed and the cause is remanded to that court.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the Court en Banc. *Frank, C. J., Atwood, Hays* and *Tipton, JJ.,* concur; *Gantt, Ellison* and *Leedy, JJ.,* dissent.

### ON MOTION FOR MODIFICATION OF OPINION.

PER CURIAM:—By their motion filed, the respondents seek a rehearing in this cause, or, in lieu thereof, a modification of the divisional opinion herein as rendered and as thereafter adopted by this court en banc. The gravamen of the motion is the alleged inadequacy of the opinion in respect of its treatment of the subject of "maintenance damages" of the pipe line involved in this action. This is the sole ground assigned in support of each branch of the dual motion, which was filed at the judgment term, May, 1934, but not within ten days after the rendition of the judgment in this court. On account of its belated filing the paper is wholly ineffectual to operate as a motion for rehearing and will be treated as one for modification only.

It is insisted in the motion that the character and the measure of the maintenance damages are left undecided by the opinion. This complaint seems groundless. The opinion is entirely clear and is as exhaustive as needs be in its treatment of all damages that are involved in the record before the court. Particularly so in certain passages quoted approvingly from the case of O'Connor et al. v. Great Lakes Pipe Line Company et al. (C. C. A.), 63 Fed. (2d) 523.

The ruling referred to is, substantially, that damages claimed to be caused by the granting of the easement (the diminution in market value of the servient estate across which the pipe line runs and upon which the burden of the easement is laid) are not recoverable under the contract in suit and that the damages agreed therein to be paid respondents were clearly contemplated by the contract (precisely like the one in suit) to be those caused by the laying of each line of pipe as and when laid, including maintenance damages, if any, as and when accrued. The opinion also sets out and stamps with approval another passage from the O'Connor case to the effect—given concrete application here—that presently recoverable damages are only those flowing from injuries that have been done to crops, surfaces, fences, and things of like nature on respondents' premises (as the word is interpreted in both the questioned opinion and the O'Connor case) ; that is to say—and in general and comprehensive terms,—to damages flowing from physical injuries done by this appellant to the land and its appurtenances necessarily used in the laying of the existing pipe line *or in repairing or maintaining the same.* So it is manifest that said opinion places maintenance damages in the same category with the other physical injuries stated in connection therewith.

With respect to the measure of damages which is applicable in the determination of maintenance damages as considered wholly apart from damages to appurtenances, it is to be observed that the present record presents no issue upon that matter. The petition of respondents declared upon specific and itemized damages for physical injuries to the land and appurtenances from the laying of the pipe as well as upon the damage resulting from the granting of the easement, but was silent as to maintenance. The answer of appellant admitted liability for the physical injuries if the same should be supported by the evidence adduced. Respondents had a verdict which included those items, and the verdict in that regard was not challenged in the trial court or at any time or in any manner on appeal. So that a present discussion of measure of maintenance damages as a matter separate and distinct from the physical injuries done to appurtenances in the laying of the pipe is useless, since it follows as a corollary to the proposition demonstrated in the opinion complained of that the measure of damages is the same for physical injuries done the premises by repair and maintenance as for the related injuries done in the laying of the pipes.

The motion should be denied and it is so ordered.