WILLIAM A. VORTHMANN et al., Appellees, v. GREAT LAKES PIPE LINE COMPANY, Appellant.

No. 44961.

JANUARY 16, 1940.

REHEARING DENIED JUNE 20, 1940.

Tinley, Mitchell, Ross, Everest & Geiser and Collman E. Yudelson, for appellant.

Kimball, Peterson, Smith & Peterson, for appellees.

MITCHELL, J.—William A. Vorthmann and Lydia F. Vorthmann were each the owners of separate farms located in Pottawattamie county, Iowa.

The Great Lakes Pipe Line Company desiring to secure a right of way across the premises owned by the Vorthmanns entered into a separate written agreement with William A. Vorthmann which is identified in the record as plaintiffs' Exhibit 1, and with Lydia F. Vorthmann, which written agreement is identified as plaintiffs' Exhibit 3. These contracts are identical in every particular except that they cover different pieces of real estate. Simultaneously with the execution of the right-of-way agreements between the company and William Vorthmann there was executed and delivered to the company a written instrument identified as plaintiffs' Exhibit 2, and by Lydia Vorthmann, Exhibit 4. In the summer of 1937 the pipe line company constructed a second pipe line across the property of the Vorthmanns. Upon such construction the pipe line company offered payment of the sum of 50¢ per rod, plus all property damage occasioned by the reason of this construction. This tender was refused by the Vorthmanns and demand was made upon the company to make payment in the sum of $840, which amount was claimed to be due by the Vorthmanns under the right-of-way agreement executed between the company and

William A. Vorthmann, which is identified as plaintiffs' Exhibit 1, and the sum of $440, which amount was claimed by the Vorthmanns to be due and owing under the right-of-way agreement executed between the pipe-line company and Lydia F. Vorthmann, which is identified as plaintiffs' Exhibit 3. The pipe-line company refused to make these payments as demanded, and this action was brought. It was commenced at law, in two separate counts. Count 1 prayed for damages in the amount of $922.50, under the provisions of the contracts identified as Exhibits 1 and 2. Count 2 prayed for damages in the amount of $440 under the provisions of Exhibits 3 and 4.

William A. Vorthmann is now the owner of all of the above-mentioned property and the right-of-way agreement executed between the pipe-line company and Lydia Vorthmann. The amount due William A. Vorthmann by reason of crop damages occasioned by the construction of this second pipe line, by stipulation between the parties, was agreed to be the sum of $82.50, which amount was tendered by the company. The pipe-line company filed answer in which it admitted the ownership of the property and that the right-of-way contracts had been entered into, but claimed that under the terms of the said contracts the amount due the plaintiffs was 50¢ a rod plus the damage to the crops, which amounts it tendered into court. The jury was waived and the case submitted to the court, which entered judgment in favor of William Vorthmann in the amount of $1,362.50. The pipe-line company being dissatisfied has appealed.

The difficulties that confront us grew out of certain right-of-way contracts that the parties entered into. The Great Lakes Pipe Line Company was desirous of securing a right of way over certain real estate owned by William Vorthmann; many conferences were held between the representatives of the pipe-line company and Vorthmann. The subject of these conferences was the question of the amount of money the company should pay. Finally on July 7, 1931, a written contract was entered into, known in the record as plaintiffs' Exhibit 1 which we set out in full:

"Right of Way Agreement

"For and in consideration of the sum of One and no/100 Dollar (1.00) to .......... in hand paid by Great Lakes Pipe Line Company, a corporation, of Kansas City, Kansas, the receipt of which is hereby acknowledged William A. Vorthmann, wife, Minnie A. Vorthmann do hereby grant to Great Lakes Pipe Line Company, its successors or assigns, the right to lay, maintain, operate, relay and remove at any time a pipe line or pipe lines for the transportation of oil or oil products, gas and water, and if necessary, to erect, maintain, operate and remove telephone and telegraph lines, with right of ingress and egress to and from the same, on, over and through certain lands situate in the County of Pottawattamie and State of Iowa, described as follows: $W\frac{1}{2}$ of $NW\frac{1}{4}$ of Sec. 24 and $W\frac{1}{2}$ of $NE\frac{1}{4}$ of Sec. 23, all in T. 74 N. R. 42 W.·

"The said grantor ........ heirs or assigns are to fully use and enjoy the said premises except the easement for the purpose hereinbefore granted to the said Great Lakes Pipe Line Company, its successors and assigns.

"The said Great Lakes Pipe Line Company for itself and its successors or assigns hereby covenants to bury the line of pipe so that the same will not interfere with the cultivation of said premises.

"All damages to crops, surfaces, fences, and premises for and because of the laying of each line of pipe and each telegraph and telephone line shall be paid for as soon as line or lines are completed. In addition to this there shall be paid on the laying of the first line of pipe an additional compensation at the rate of fifty cents (50¢) per rod for each rod or fraction thereof of land on these premises, across which said line is laid. Additional lines shall be laid for a consideration the same as for the first. If the amount of damages to fences, crops and premises which may be suffered by reason of laying, maintaining, operation, altering, or removing said pipe lines or telegraph and telephone lines, cannot be mutually agreed upon, then same shall thereof be ascertained and determined by three disinterested persons, one to be appointed by the owner of the premises, one

by Great Lakes Pipe Line Company, its successors or assigns, and the third by the two so appointed as aforesaid, the award of two of such persons being final and conclusive.

"The terms, conditions and provisions of this contract shall be binding upon the parties hereto, their heirs, administrators, executors, successors and assigns, and the said .......... hereby relinquishes her right of dower in and to the premises hereinbefore granted.

"The telephone and telegraph lines, if any, shall follow along the property lines of the above property, along the fence row, on section line on north of property.

"If after the final survey, the right of way shows more rods than paid for in executing this instrument, the Great Lakes Pipe Line Company, its successors or assigns, shall be privileged to use additional rods and pay for same at the rate above provided.

"Dated this 7th day of July, 1931

"Wm. A. Vorthmann (Sgd)
"Minnie A. Vorthmann (Sgd)"

On the same day and at the same time plaintiffs' Exhibit 2 was entered into.

EXHIBIT 2

"Receipt and Release

"July 7, 1931

"Received from Great Lakes Pipe Line Company the sum of Eight Hundred Forty & No/100 Dollars ($840.00), which I acknowledge to be in full settlement and discharge of a claim growing out of property damage sustained by me on or about August 15, 1931, for which damage I have claimed the said Great Lakes Pipe Line Company to be legally liable, and in consideration of said sum so paid to William A. Vorthmann hereby remise, release and forever discharge the said Great Lakes Pipe Line Company, its affiliated Companies and Subsidiaries, its successors and assigns, for any and all actions, causes of action, claims and demands for, upon or by reason of any damage or loss which heretofore has been or which here-

after may be sustained by me in consequence of All property damage, real and personal by reason of constructing one four inch gasoline pipe line across the W½ of NW¼ of Sec. 24, and W½ of NE¼ of Sec. 23, all in T. 74 N. R. 42 W Pottawattamie County, Iowa. This receipt covers payment for right of way agreement. This receipt does not cover crop damage.

"Witness my hand and seal the day and year first hereinafter written.

"Wm. A. Vorthmann (Sgd.)

"Witness R. R. Crawford (Sgd.)

"Address

"Witness R. S. Spencer (Sgd.)

"Address"

Exhibit 3 is identical with Exhibit 1, except that it covers different land owned by Lydia Vorthmann, who signed same. Exhibit 4 is identical with Exhibit 2, except that the amount is $440 and it is signed by Lydia Vorthmann.

The appellee contends that the construction of the clause "Additional lines shall be laid for a consideration the same as for the first" entitles them to the same amounts upon the laying of additional pipe line across his land under the contention that the consideration for the agreements was $5.00 per rod, and further that he was entitled to the introducing of testimony to show this agreement in parol entered into prior to the execution of this right-of-way agreement to show that this was the consideration for the appellee entering into the said right-of-way agreements.

Appellant urges that the contracts are complete and unambiguous and must speak for themselves and that logical interpretation of the same would lead to the conclusion that the consideration for the construction of the original pipe line was the sum of 50¢ per rod, plus the payment of all damages caused by such construction to the crops, fences, surfaces and premises and that the introduction of parol testimony to controvert this and show a consideration other than that expressly found within the right-of-way agreements was a violation of the parol evidence rule.

In the appellant's brief we find a very good statement of the issues in the case at bar. We quote:

"The issues before the court occasioned by the appeal brought by the defendant revolve around the interpretation of several writings entered into by the parties some time ago. Upon the resolution of the differences conceived to be present depends the success of this appeal. They center about the questioned interpretation given the instruments by the parties in the court below. These interpretations are irrevocably conflicting. That of the plaintiff, briefly stated is that there does exist an ambiguity in the right of way agreements executed by the parties, that shadow being cast by the presence of a second instrument executed at the time the contract was entered into, namely, a Receipt and Release, signed by the parties and covering the payment for the right to construct and the future construction of the initial line of pipe to be laid through plaintiff's premises. Plaintiffs further contend that the ambiguity raised concerns the consideration above paid, or, more specifically, the clause 'additional lines shall be laid for a consideration the same as the first', and that due to the presence of such an uncertainty as to that consideration, they are entitled to adduce parol to show just what the parties contracted for, what they meant to contract for, and just what was the understanding of the parties as to the meaning of the language employed in the instruments in question, and how they construed them. The defendant's position is no less simple; it is that the reason for the execution of the right of way agreements was to concretely set forth the duties and obligations of the parties by putting into specific terms and provisions; that this was done; that the contracts as executed are complete and accurate and unambiguous; that they speak for themselves; and recourse to parol is unnecessary, and violates the well established rules forbidding the introduction of extrinsic evidence which contradicts and varies the plain wording of an instrument complete on its face; and that the action of the trial court, in permitting such parol testimony that was patently inadmissible, was error, and since it operates to the prejudice of the defendant-appellant, should be reversed."

 The law governing this case is well-settled, if the contract is clear-cut and unambiguous the wording of the contract must control, but if the contract is ambiguous then parol evidence is admissible. We quote from a recent case, opinion by Justice Kindig, Buser v. Grande Ave. Land Co., 211 Iowa 659, 664, 234 N. W. 241, 244:

"Both the assignment and the real estate contract were prepared by appellant. Their phraseology embodies appellant's dictation. No indication at any time was given appellee by appellant that Knolk was not entitled to receive a deed in return for a second mortgage when the purchase price was sufficiently reduced. Likewise, appellant at all times understood that Knolk would build a house of the size and value contemplated. The first mortgage was for the amount of $6,500. Everything in the record suggests that appellant desired Knolk to build a house which would cost at least that amount. Under that record, then, the guaranty agreement, as disclosed, does not in any way misrepresent or contradict the intention of the parties. Perhaps the guaranty contract did not express such intention 'so clearly as to make it beyond all question.' Moreover, the object of the guaranty contract entered into by appellant was, in effect, to produce credit from appellee. Resultantly, the agreement will be given construction according to the intention of the parties as the same 'may be disclosed' by the language employed and the circumstances under which the guaranty is given. S. Hamill Co. v. Woods, 94 Iowa 246 [62 N. W. 735]; Bridgeport Malleable Iron Co. v. Iowa Cutlery Works, 130 Iowa 736 (local citation 740, 741) [107 N. W. 937]; T. M. Sinclair & Co. v. National Sur. Co., 132 Iowa 549 (local citation 556, 557) [107 N. W. 184]; Tucker v. Leise, 201 Iowa 48 (local citation 50) [206 N. W. 258]. * * *

"During our discussion in T. M. Sinclair & Co. v. National Sur. Co. (132 Iowa 549), supra, on pages 556, 557 [107 N. W. 184, 187], we said:

" 'It is true, of course, that a contract may be so vague and indefinite as that it is impossible to collect from it the intent of the parties thereto; and in such cases the instrument is

void, and no recovery may be had thereon, either at law or in equity. * * * But it is with great reluctance that courts reject any agreement as insensible or unintelligible. One of the canons of construction is to give effect to every provision of a contract, if possible and practicable; for the reason that the parties themselves evidently intended something thereby, and it is not for courts to reject the same unless it be so vague and uncertain that neither a general nor a particular intent can be gathered therefrom. In other words, a contract should be so construed, if possible, as to give effect to each and every provision thereof. * * * As between two constructions, each reasonable, one of which will accomplish the intention of the parties and make the contract an enforceable one, and the other which will make it unenforceable and meaningless, the former is to be preferred. * * * As the provision in this contract was inserted by defendant and for its benefit, any ambiguity therein is to be taken most strongly against the party who chose the language. * * * To arrive at the intent of the parties, the surrounding circumstances should be taken into account, and the court should place itself as nearly as may be in the position of the parties who made the contract. It should look to the subject-matter of the contract, the relation of the parties thereto, and the objects and ends intended to be accomplished thereby.'

"Again, in Tucker v. Leise (201 Iowa 48), supra, on page 50 [206 N. W. 258, 259] we declared:

" 'The rule is too well settled to require citation of authority that, where such [guaranty] clause is clear-cut, concise, and unambiguous, the wording of the contract must control; but it is also true that, where the wording of a contract is ambiguous, or susceptible of two or more constructions, then the situation of the parties and the circumstances surrounding the transaction, together with the conduct of the parties in relation thereto, must be considered, in ascertaining their intentions. * * * Another rule of construction is that, where there is ambiguity or obscurity, the doubt will be resolved against the party making the guaranty.' "

In Iowa Bond & Cas. Co. v. Cram & Sons, 209 Iowa 424, 428, 228 N. W. 24, 26, this court said:

"The application was prepared by plaintiff, and doubts as to its meaning must be resolved against it."

It is conceded that the written instruments, Exhibits 1, 2, 3, and 4, were prepared by the pipe-line company, and, under the cited case, where there is ambiguity the doubt will be resolved against the parties that prepared the instruments.

■ Exhibits 1 and 2 were executed at the same time, they grew out of the same transaction and must be construed together.

The contracts, Exhibits 1 and 3, recite a consideration of one dollar ($1.00). Even appellant does not contend that this amount is the true consideration. Exhibits 2 and 4 show beyond any doubt that the actual consideration for the contract Exhibit 1 was $840 and contract Exhibit 3, $440; and Exhibits 2 and 4 expressly provided that these payments did not cover crop damages. The record shows that under count 1 the appellant company, in crossing the land therein referred to, was given an easement to lay a pipe line for a distance of 168 rods, at $5.00 per rod, it amounts to $840, the exact amount paid under the right-of-way contract, while under count 2 appellant company was given an easement to lay a pipe line across 88 rods of land therein referred to and paid therefor the sum of $440 or at the rate of $5.00 per rod, the amount claimed by appellee. The sum of $840 was paid at the time of the execution of the contract Exhibit 1 and the sum of $440 was paid at the time of the execution of contract Exhibit 3. There is no explanation of the amount of the payment made, to wit, the sum of $840 and $440 except the explanation contended for by the appellees, that they were to receive $5.00 per rod.

Appellant offered no testimony and attempted no explanation of the fact that the amounts which were paid in accordance with the terms of Exhibits 2 and 4 show the fact to be that $5.00 per rod was paid.

The contracts, Exhibits 1 and 3, provide as follows: "Addi-

tional lines shall be laid for a consideration the same as for the first.'' Exhibits 2 and 4 show that the consideration for the first was $5.00 per rod. The evidence shows without dispute that the appellee refused to grant the right of way until the company agreed to pay the sum of $5.00. That the negotiation covered a long period of time. The contracts were prepared by the appellant company. They offered no testimony by way of explanation or denial of appellees' testimony. Upon such a record the lower court was right in entering judgment for the appellee.

The appellant cites and relies on the case of O'Connor v. Great Lakes Pipe Line Co., 8 Cir., 63 Fed. (2d) 523, the opinion being written by the late Judge Kenyon. The question involved in that case was entirely different and it does not help us solve the difficulties that confront us in this case.

The appellant complains of the admission of certain evidence which was objected to, an amendment to the abstract shows that the court sustained the objections made by appellant. In its reply brief appellant says that although the entry is dated April 2, 1939, it was not spread upon the record until October 14, 1939, after the abstract had been filed, and they had no knowledge of it until the appellees' amendment to abstract was filed. The order as entered is not attacked, and as the trial court sustained the objection, appellant of course has nothing to complain about. It necessarily follows that the judgment of the lower court must be and it is affirmed.—Affirmed.

RICHARDS, MILLER, HALE, BLISS, and OLIVER, JJ., concur.

HAMILTON, C. J., and SAGER and STIGER, JJ., dissent.

HAMILTON, C. J. (dissenting)—The case was tried below and presented to this court by the parties on the theory of an ambiguous contract, plaintiffs claiming, on the one hand, ambiguities in the contract which entitled them to resort to parol evidence, and the defendant, on the other hand, contending there is no ambiguity, that the contracts as executed are complete, accurate and unambiguous and speak for themselves, that

recourse to parol was unnecessary and that the admission of such testimony violated the well-established rule forbidding the introduction of extrinsic evidence which contradicts and varies the plain wording of the written instruments. I am unable to see any ambiguity in the contract.

There is no question but what all the prior conversations and contemporaneous agreements were reduced to writing and are contained in the exhibits set out in the majority opinion. The rule universally adopted (page 243 of 177 Iowa) is that:

"The contemporaneous and prior oral arrangements bearing on the same subject are conclusively presumed to be merged in the terms of the written instrument. * * * That an expressed consideration named in a written agreement cannot be altered by parol evidence when the consideration is contractual and not merely formal, is well settled." Slump v. Blain, 177 Iowa 239, 242, 158 N. W. 491, 492.

In the cited case, a lease was involved by the terms of which the rent to be paid was the sum of $1,050. The conversaation sought to be proven tended to show an oral agreement that a different amount should be paid as rent. Such evidence manifestly tended to vary and contradict the provisions of the written contract.

In Parks & Co. v. Howard Hotel Realty Co., 200 Iowa 479, 481, 203 N. W. 247, 248, there was involved the question of the percentage of commission to be paid the plaintiff. The written instrument provided for 10 percent. The defendant introduced evidence to show that the oral understanding and agreement was that the percentage to be paid to the plaintiff was to be 8 percent. The trial court refused to admit the evidence and, in affirming the case, this court said:

"It will be noted that the contract is clear and unambiguous. Oral evidence that the contract was for 8 per cent commission, and not 10 per cent, is clearly contradictory to the essential terms of the written contract. The general rule that an oral collateral agreement contemporaneous with a written agreement may be proved, is quite beside the mark herein. In order

to be so provable, the alleged contract must be consistent with the written contract, and must ordinarily relate to matters not covered by the written contract.

"To apply the rule as contended for by appellant, would be to put oral evidence upon a parity with the written contract. No written contract could be immune against oral contradiction. The question has been before us many times, and nothing can be gained by extended argument thereon." (Citing cases.)

The written instruments which are the basis for plaintiffs' suit are in nowise ambiguous or uncertain so as to call for extrinsic evidence to render certain the meaning of language which, without it, would be obscure or unintelligible. The issues of fraud, misrepresentation, accident or mistake are not involved. The extrinsic parol testimony, to the effect that the actual agreement between the parties was for the payment of $5.00 per rod for the right of way, materially changes the terms of the written instruments; not only so, it tends to destroy and render ambiguous and meaningless the contractual provisions as to damages to crops, surfaces, fences, and premises because of the laying of each line of pipe and the further provision for arbitration. It is a direct contradiction of the express language of the receipts and releases which on their face purport to cover both damages to property and payment for right of way across the premises.

The instruments provide that, by the payment of $1.00 plus 50¢ per rod, the company secured the *right* to go upon the premises and lay *one* pipe line. This was a consideration given for the right or easement for right of way. Nothing further was due or payable under the terms of the written instruments until after this right was exercised and the pipe line laid, at which time the remainder of the promised consideration expressed in the contract, namely, damages to crops, surfaces, fences and premises, became due and payable; in the event the parties were unable to agree upon the amount of such damages, the contract sets up a tribunal of three arbitrators to settle and fix the amount of the damages. As contended by appellant, it is the tenet of contractual construction, too fundamental for the

citation of authority, that an instrument must be construed as a whole and meaning given to every part thereof whenever possible. It is also a fundamental rule of construction that the rules of construction created by the court to aid in its interpretation of various instruments cannot be invoked to contradict the express language of the instrument so interpreted. If we adopt the appellees' theory that the agreement was to pay $5.00 per rod for the right of way alone, it is impossible to give consideration to the other provisions of the contract. They are rendered meaningless. The portion of the written instruments which is the basis of plaintiffs' claim is the following clause:

"Additional lines shall be laid for a consideration the same as the first."

Appellees say that this particular statement contains no ambiguity. This is very true. The only thing to be ascertained is the consideration which the contract provides was to be paid for the first line. The appellees go beyond the written contract to ascertain what was agreed to be paid for the laying of the first line and resort to parol testimony to the effect that the agreement was $5.00 per rod instead of the consideration plainly expressed in the written instruments.

"A written instrument is ambiguous only when found to be of uncertain meaning by persons of competent skill and information. 1 Greenleaf on Ev. (Lewis Ed.), Sec. 298." Comptograph Co. v. Burroughs, 179 Iowa 83, 108, 159 N. W. 465, 473.

Contracts containing identical provisions with the contract in question have been construed in other jurisdictions. Shoemaker v. Great Lakes Pipe Line Co., 227 Mo. App. 941, 60 S. W. 2d 76, affirmed, Mo. Sup., 75 S. W. 2d 849; O'Connor v. Great Lakes Pipe Line Co., 8 Cir., (Mo.) 63 F. 2d 523; Fulkerson v. Great Lakes Pipe Line Co., 227 Mo. App. 882, 60 S. W. 2d 71, affirmed, 335 Mo. 1058, 75 S. W. 2d 844. In the O'Connor case, the circuit court for the Eighth Circuit, after quoting from the right-of-way agreement the identical language, found in the instant case, said [63 F. 2d 523, 526]:

"The damage, if any, for which payment was to be made was provided by the contract. It was to crops, surfaces, fences, and premises, not by the granting of the easement, but by 'the *laying* of *each* line of pipe'. The contract provides for burying the line of pipe so as not to interfere with the cultivation of the whole farm. If the amount of damages to the fences, crops, and premises by reason of the laying of each line of pipe cannot be determined, etc., then a method is provided so to do. If any new line is laid, plaintiffs are to be paid for all the physical damage to crops, surfaces, fences, and premises. All damage done in making repairs is to be paid, maintenance damages when they occur are to be paid, and plaintiffs are to receive a compensation of 50 cents a rod for all pipes laid. We see nothing ambiguous about this.''

In the Shoemaker case, supra, the court said :

"The contract provides that when any pipe line is completed that the whole damage, for said pipe line, becomes due and payable. The contract further provides that for each pipe line constructed in the future said additional lines shall be laid for a consideration the same as the first. * * * We conclude in that case, and still conclude, that the contract entered into between the parties fixed and limited the elements of damages so that same must be determined by the terms of the contract, rather than by the general provisions of the law governing condemnation proceedings.

"The granting clause of the contract in issue starts out with an expression of consideration of $1. We conclude that the whole contract must be considered in determining the consideration for the rights granted and conclude that, under the terms of the contract, the consideration for each pipe line laid is such damage to crops, fences, and premises as may occur by reason of laying, maintaining, operating, altering, or removing said pipe line. We conclude further that, that all consideration by way of damage, present and future, as to any pipe line when constructed then becomes due, and that for the construction of any *pipe line constructed in the future* the consideration, by

way of damages, embrace *the same elements,* that is, the damages for any future pipe line constructed, becomes due when constructed, and damages to crops, fences and premises, both present and future, can then be determined on the same basis and including same elements as in this instance." (Italics ours.)

The two receipts set out in the original opinion, one for $840 and the other for $440, expressly state they are given in payment of "all property damage real or personal by reason of constructing one * * * pipe line * * *. This receipt covers payment for right of way agreement."

From the Fulkerson case, supra, we quote the following [335 Mo. 1058, 75 S. W. 2d 846] :

"The easement, 'the right to lay, maintain, operate, re-lay and remove at any time a pipe line or pipe lines,' is expressly granted in the first paragraph of the contract. True, the consideration there named is nominal, $1. In the fourth paragraph a further consideration of 50 cents per rod of line laid is provided. That is an actual consideration and is to be paid regardless of whether damage results or not. Thus by the terms of the contract the grant of the easement if used is compensated. apart from any damage that may result to the land and its appurtenances from acts done in the exercise of the right granted. But the parties contemplated that in doing the things which the contract granted defendant the right to do the latter might damage plaintiffs, and they provided that plaintiffs should be compensated for such damage. The damage there provided to be paid is not for or because of the granting or the existence of the easement or the *right* to go upon the land and lay, maintain, operate, re-lay, and remove pipe lines, but for and because of the *laying* of each line of pipe."

It is obvious to me that the construction placed upon the language of the contract by the Missouri court and the Federal circuit court is unanswerable. The decision of the majority in the instant case does away with the $1.00 consideration and the 50¢ per rod and substitutes $5.00 per rod. This eliminates or fails to take into account all the provisions with reference;

to damages or the provisions for arbitration. Under this decision, the appellees, were it not for the receipts, Exhibits 2 and 4, set out in the original opinion, could still collect the damages, if any. Appellees have never made any such claim. Plaintiffs signed these receipts. They purport to cover both damages and right of way. It must necessarily follow that, even though parol evidence is to be considered as competent, such evidence is direct contradiction of these written receipts and the writing should prevail. As to the first line, the parties settled in advance both the damages and the cost for the right of way. The damages had not yet occurred. The pipe line had not been laid. However, it will be noticed that the receipts looked ahead and cover damages sustained "about August 15, 1931". The pipe line was completed the following November.

Our conclusion is that, since there can be found no ambiguity permitting introduction of parol evidence, it follows that the trial court was in error in permitting the introduction of such testimony. The appellant, before answering, offered and tendered complete performance according to the terms of the written instruments. This was repeated in the answer filed. Due and proper objections were interposed to the parol testimony and, at the close of the plaintiffs' testimony, defendant offered the written instruments, Exhibits 1, 2, 3 and 4, and renewed its offer to pay the crop damages alleged in plaintiffs' petition and to pay to the plaintiffs, on account of the laying of the second line of pipe, damages to crops, surfaces, fences and premises such amount as it be ascertained or determined by three disinterested persons, specified in said agreement, and 50¢ per rod, specified in the right-of-way agreement, and all costs accrued up to the date of the offer. The defendant offered no other testimony but rested its case in the court below on the express terms of the contract and its offer to fulfill the same. This was all that was required of the defendant.

The case should be reversed.

SAGER and STIGER, JJ., join in the dissent.